GROUT *v.* SOLON, EXECUTOR ETC.

[No. 19,275. Filed May 11, 1961.]

*Merl A. Barns* (deceased), *John H. Krueckeberg,* both of Ft. Wayne, and *Charles C. Fraze,* of Albion, for appellant.

*C. A. Lincoln* (deceased), *James P. Murphy* (deceased), *Louis Bloom, Bloom & Bloom* and *Thomas M. Moorhead,* all of Ft. Wayne, for appellee.

KELLEY, J.—Appellant filed a claim in the estate proceedings of Alvona May Grout, deceased, for nursing services rendered the decedent from August 9, 1953 to January 26, 1956, both dates inclusive, and for "out of pocket advances" for the care, support, medicines, taxes, groceries and other expenses for the maintenance of decedent. The issues were tried to a jury. At the conclusion of appellant's evidence in chief, the court, upon motion of appellee, directed the jury, by peremptory instruction, to return a verdict for the appellee. The court rendered judgment on the verdict and that appellant take nothing by reason of his "complaint."

The cause reaches here on an assignment of error in the overruling of appellant's motion for a new trial. The propriety of the action of the court in directing the verdict is the point most emphasized by appellant. We may notice, however, a preliminary point projected by appellant. He says that the court erred in sustaining appellee's motion for a directed verdict because the motion was "oral and was not in writing."

While indicating that a motion for directed verdict dictated by the party to the reporter "would be tantamount to a motion more formal and should be so treated," appellant avers, in substance, that in the present action the motion "becomes the

corner stone of the appeal" and that where, as here, by "pure chance and unintentional coincidence" the motion is "preserved" by the "voluntary recording" thereof by the reporter, it nevertheless is insufficient unless presented in writing. Appellee counters this by saying that the alleged error was never "by objection or in the Motion for New Trial" brought to the attention of the trial court. She further says that at the time her counsel was making the motion, the reporter was "taking it in shorthand" and later reduced it to writing. Appellant replies that he saved the error by the specification in his new trial motion that the court erred in directing the verdict for appellee. However, we are inclined to the position that the sole specification that the court erred in directing the verdict goes to the propriety of the action of the court in directing the verdict upon the substantive factual basis established by the evidence and not to a claimed insufficiency of the motion itself because it was not in writing. If at the time the motion was made, the appellant had deemed the same improper in form and nature, it should have been brought to the attention of the court by appropriate objection. The record discloses no objection by appellant to the motion and appellant does not contend that he made any objection thereto. We therefore find no error presented in the regard asserted by appellant.

The evidence put in by appellant establishes that he rendered services, in the nature of nursing services, for his mother, the decedent, and that he advanced and paid out money for her welfare, use and benefit. In ruling on appellee's motion for a directed verdict, the court said:

"It would seem there must be an express or implied agreement to pay. . . . *I don't believe there is anything in this record* at this time *that shows*

*there was ever an indication on the part of the mother that she expected to pay this boy back, . . ."* (Emphasis supplied.)

Appellant states in his brief that he makes no contention that an express contract was proven because his mother, after her stroke, was unable to converse and could "never have made an express contract." Appellant also says that there was no implied contract to pay established by statements of the parent to appellant or through an "intermediary" to appellant of an intention to pay. The theory upon which appellant urges that the case should have been submitted to the jury is that "the creation and determination by a jury of such contract is not to be confined and restricted to proof of statements, verbal or written, made by the parent either to the child or to some one else and relied on by the child, but *may be proved by all the facts, circumstances and the relation of the parties."* (Our emphasis.)

Whether it be by express contract or by implied contract, there are two elements which must be established by a claimant for services rendered a ██ decedent, namely, an intention on the part of recipient of the services to pay or compensate therefor, and an expectation of pay or compensation on the part of the one rendering the services. Now, in order to hold that appellant's case should have gone to the jury, it must appear that there was some evidence, either direct or inferential, which would tend to support both of said elements. The trial court, in his statement made when ruling on the motion to direct, seemed to confine his ruling to one of the aforesaid elements, viz.: that there was nothing to show that appellant's mother "expected" to pay appellant. Of course, in this case, where the verdict was directed against

the appellant, we are not relieved by the court's statement from the duty of reviewing the matter completely.

Appellant's evidence tended to establish that the appellant was the son of the decedent; that at the time of the trial in February, 1958, appellant was 70 years of age; that he was married but was living apart from his wife; that from April 9, 1942 to August 2, 1943 he was an inmate of a state mental institution and during said time was under guardianship; that on October 15, 1946 he was judicially restored to competency; that after his release from said institution he took up residence with his mother, the decedent; that he received a pension of approximately $150.00 a month, out of which he paid his mother about $10.00 a week for his support until two days after she suffered the stroke hereinafter mentioned, after which time he discontinued the payments; that he lived in the home of his mother from about 1944 until her death on January 26, 1956 and remained in the home thereafter until about March 15, 1956; that his mother, the decedent, was about 77 years old in 1944 and in August, 1954 she was 87 years of age; that up until August 8, 1954 she was active and in apparent fair health and, although infirm with age, she "kept the house" and took in washings.

About August 8, 1954 she suffered a "stroke" and thereafter became feeble and unable to do for herself. There is evidence that from the time of her affliction until she entered a hospital three days before her death on Januay 26, 1956, the appellant fed her, washed the clothes, pulled or pushed her about in a chair, took her out on the porch, cleaned her soiled garments, went to the store and brought home the groceries, assisted her to the toilet, lifted her, and placed her on the seat; and, in general, looked after her needs and welfare. There is some evidence from which it could be inferred that

he paid for the groceries, fuel, utility bills, medicines, and some taxes. During this time, decedent's mental condition was unstable and unreliable. The appellee, Lillian E. Solon, is a sister to appellant. There is evidence that she and her daughter were seldom at the home to visit and be with the decedent but, in opposition to this, there is evidence that friction existed between appellant and said appellee and that appellant exhibited an antagonistic attitude, kept the doors locked, and on one occasion threw or pushed appellee's daughter against the wall. The will of the decedent dated November 9, 1943 left the home property to said named appellee, left another piece of property in trust for appellant (appellee was named as the trustee) "until such time as he [appellant] is able to care for it himself," (bracketed word is ours), and provided that any money or bonds in decedent's safety box "in my name not otherwise designated" should be equally divided.

There is evidence that decedent kept some money in a purse in her home of which appellant had no knowledge and that she had three separate savings accounts in local banks in the respective amounts of $4533.44, $4464.60 and $4659.21. The first two said designated accounts were in the joint names, with right of survivorship, of decedent and said appellee, and the account last designated was in the name of decedent only. It appears that appellant did not know of these savings accounts. Part of the money in the savings accounts apparently came from the sale of a parcel of land by the decedent but whether the property sold was the land designated in decedent's will as in trust for appellant does not appear from the evidence.

There was evidence of the reasonable value of nursing services and that appellant had lost weight and became emaciated, tired, worn, drawn, haggard, run-down, dis-

traught and nervous. The inference sought by appellant is, of course, that his depreciating physical condition was attributable to and occasioned by the work, labor and care he had bestowed upon his mother after her "stroke" and until her death. There is no evidence nor permissible inference of any word or verbal expression of any kind by decedent that she expected or intended that appellant should be paid or compensated for his efforts or that she considered herself obligated therefor. And there is no direct evidence that, prior to the filing of his claim against the estate, appellant ever asked for payment, conversed regarding it, or expressed that he expected any pay or compensation for his services.

The evidence, as a whole, clearly portrays that appellant, being then 55 years of age and without a home of his own, left the hospital and went to live with his aged mother, paying her a small amount per week; that while he was there, his mother suffered a "stroke," became incapacitated and mentally disturbed and he began and continued to take care of her, paying for the fuel, groceries, etc., necessary for him as well as his mother. Under such circumstances the presumption usually prevails that the services rendered and moneys advanced by a son for his mother were voluntary and gratuitous. Appellant seeks to exclude himself from the force of the general presumptive rule by urging that under the facts and circumstances shown by his evidence, there could have been no "interchange of mutual and reciprocal duties and benefits" ordinarily "inherent in the family relationship of parent and child," thereby entitling appellant to recover.

Appellant clings heavily to the pronouncements found in *Garrett* v. *The Estate of Christian Hoctel, Deceased*

(1957), 128 Ind. App. 23, 142 N. E. 2d 449, as sustaining his position in this case. The reliance, however, is rendered somewhat precarious by a comparison of the factual situation established in that case and the facts shown by appellant's evidence in the instant cause. In the Hoctel case, the daughter, then 47 years of age, went to the home of her parents for the express purpose of assisting and helping them. The house in which they lived was of frame construction, without any furnace heat, plumbing, inside toilet facilities, or a bathroom. The water supply was outside the house and the cook stove was a woodburner. The claimant had complete charge of the household affairs, prepared the meals, including special foods and diets, and acted as a practical nurse. From 1945 to 1947, she cared for both her parents, and from 1947 to 1953 she continued the care of her father. The severe infirmities of the parents, the numerous afflictions of the father, and the difficult, distasteful and confining nature of the appellant's work are all particularly delineated in the opinion and need not be here repeated. There was evidence that the father expressed satisfaction with claimant's services and told others, including the appellant, that she would be well paid and well taken care of when he, the father, was gone. Such peculiar and unusual circumstances and other factors mentioned in the opinion were of such nature and force as to impel the conclusion that "equity and justice require compensation." Quotation from *Wainwright Trust Co., Admr.,* v. *Kinder* (1918), 69 Ind. App. 88, 120 N. E. 419.

The present case displays no circumstances similar, kindred or comparable to those apparent in the aforesaid Hoctel case. Here, we may repeat, the claimant, the appellant, after discharge from the hospital and guardianship in 1943, he being then about 55 years of

age and living apart from his wife, went to the home of his mother, she being then about 76 years of age, to live. Out of a monthly pension of $150.00, he paid his mother the sum of $10.00 per week for his "board and room." According to appellant's brief, his mother "on her part, being a widow did washings and ironings from which she was able to make an income." This relationship continued until August 8, 1954, on which date appellant's mother, then 87 years of age, suffered a "stroke," became feeble, unable to do for herself, and became afflicted with an unstable and unreliable mental condition. Thereafter, appellant discontinued his weekly payments and took care of his mother in the ways and manner heretofore mentioned.

Appellant's whole case is rested on the asserted proposition that from the time of his mother's disabling stroke in August of 1954 to the time of her death in January of 1956, a period of about one year and five months, she was mentally unable to make any expression with regard to payment for his services or to render any "interchange of mutual and reciprocal duties and benefits," and, therefore, the presumption of gratuitous service should be "precluded as a matter of law."

Appellee presents a host of inferences which could be reasonably drawn from the evidence by the jury against the validity and justice of appellant's claim. In substance, she contends extensively, and cites several cases to support her contention, that the evidence and the permissible inferences therefrom are not sufficient to warrant an implication that appellant expected to be paid or that the decedent intended that he should be paid. With much of this we may quite agree. But such is not the problem before us. Our only task in this case is to determine whether there was some evidence and inferences in support of

the essential elements of appellant's claim which should have gone to the jury. The trial court, when considering a motion to direct a verdict at the conclusion of a claimant's evidence in chief, is not permitted to weigh the evidence or accept any fact, circumstance or inference unfavorable to the party against whom the motion is directed. All the evidence and every reasonable, permissible inference must be taken and accepted as true. No matter how slight the evidence nor how improbable it may seem to the trial court, if there is competent evidence of probative value, including reasonable inferences therefrom, in support of the elements of the cliamant's claim essential to recovery, the issue should be submitted to the jury.

In the present case, as we said above, there is no evidence of any express contract or of any implied contract predicated upon any statements or expressions of the parties. Now, whether the facts, circumstances, conduct and relation of the parties made apparent by the evidence and permissible inferences therefrom, adduced by the appellant, would or would not afford an inference or conclusion by the jury, under proper instructions by the court, that there existed an implied contract, founded in equity and justice, to pay appellant for his services, and that he expected compensation therefor, is not, it seems to us, a matter for judicial determination by the court. The extent of the court's prerogative, as we see it, is to determine whether there is any evidence of probative value tending to support the essential elements of appellant's claim. The elements of appellant's claim essential to recovery were: that appellant rendered services for his mother, the decedent; that said services were rendered under such circumstances, facts and relations of the parties, that while not meeting all of the require-

ments of the strict rule of affirmativeness, yet, nevertheless, would warrant a proper inference therefrom of an intention to pay by decedent and an expectation of compensation by appellant; the reasonable value of said services; and that the same remain uncompensated for.

We are impressed that there is some evidence in the record tending to support each of said elements. The weight and creditability thereof and whether the circumstances are sufficient, under the instruction of the court as to the rebuttable presumption of gratuitousness of personal services by one who has been a member of decedent's family, to establish the existence of an implied contract to pay for the services, are for the jury. ". . . there is a presumption that such services are gratuitous, but . . . this presumption may be rebutted by an express or implied contract to pay for the same, *the existence of which is a question of fact for the jury." Allen, Executor* v. *Etter* (1931), 92 Ind. App. 297, 175 N. E. 286. (Emphasis supplied.) In *Schroeder* v. *Schroeder* (1947), 117 Ind. App. 410, 70 N. E. 2d 764, we also find the following language:

". . . An implied contract to pay may be inferred from facts and circumstances of the services which indicate that compensation was intended or is required by reason and justice. The question as to *whether there is an express or implied contract to pay is ordinarily one for the jury under proper instruction."* (Our emphasis.)

Appellee cites and discusses the following cases as supporting the action of the court in this case, namely: *First Bank and Trust Co., of South Bend* v. *Tellson* (1954), 124 Ind. App. 478, 118 N. E. 2d 496; *McClure* v. *Lenz* (1907), 40 Ind. App. 56, 80 N. E. 988; *Waechter* v. *Walters* (1908), 41 Ind. App. 408, 84 N. E. 22; *Zearing* v. *Walters* (1954), 125 Ind. App. 202, 122 N. E. 2d

625. None of the cases last mentioned were appeals from a directed verdict. All were fully tried and the expressions made in the several cases on appeal followed a full disclosure of all the facts by the evidence adduced by both parties in each respective case. The facts, insofar as they are referred to in the opinion in each of said cases, were not similar to those in the present action.

In the instant case, for instance, wherein all facts and inferences must be accepted as true and those only considered which are favorable to appellant, it must be taken, as appellant asserts, that the mental condition of the decedent after her stroke was such that appellant could not converse with her concerning compensation for his services. Now, upon full trial, such circumstances may or may not be believed or accepted by the jury. It may be weakened, dissipated, explained or strengthened by the evidence placed before the jury, on the trial, inasmuch as the latter considers the whole of the evidence and the varying inferences afforded thereby and is not confined to any particular phase, part or side thereof. Under the facts here made evident, we think that the trial court could not, on a motion for a directed verdict, conclude as a matter of law that it would not be possible for the jury, under such facts, to find an implied contract by decedent to compensate appellant for his services. And this for the reason that "no precise rule can be stated as to what circumstances will raise an implied contract to pay for services rendered by an adult person for his parent." *Wainwright Trust Co., Administrator* v. *Kinder* (1918), *supra*.

We are inclined to the view that there was sufficient evidence submitted by appellant to warrant the taking of the issues to the jury.

Judgment reversed with instructions to sustain appellant's motion for a new trial and for further proceedings.

Pfaff, P. J., and Bierly, Gonas, JJ., concur.

NOTE.—Reported in 174 N. E. 2d 593.