ATTORNEYS FOR APPELLANT
Jeffrey P. Smith
David K. Hawk
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
William L. Wilson
Bernard E. Edwards
South Bend, Indiana

# In the
# Indiana Supreme Court

**FILED**
May 13 2009, 1:52 pm

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

No. 71S03-0808-CV-419

ESTATE OF MARGARET H.
PRICKETT, DECEASED,

*Appellant (Defendant below)*,

v.

MARILYN PRICKETT WOMERSLEY,

*Appellee (Plaintiff below)*.

Appeal from the St. Joseph Probate Court, No. 71J01-0302-ES-92
The Honorable Peter J. Nemeth, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 71A03-0710-CV-488

**May 13, 2009**

**Sullivan, Justice.**

A woman seeks compensation for the value of her services while caring for her mother when the mother was subject to a guardianship. Indiana law presumes that services by a family member are rendered gratuitously. In this case, the presumption cannot be rebutted by evidence that the mother wanted her daughter to be compensated because the mother was under a guardianship and the guardian did not consent.

## Background

In October, 1999, the St. Joseph County Probate Court found that Margaret H. Prickett was an incapacitated person who needed the protection of a guardianship. The court appointed Real Services, Inc., and a daughter, M. Carolyn Prickett Gutman, as co-guardians of Mrs. Prickett's person, and appointed 1st Source Bank as guardian of her estate. Real Services and Gutman were responsible for providing care for her personal needs, the costs for which were to be overseen and paid by 1st Source. During the guardianship, Mrs. Prickett lived with another daughter, Marilyn Prickett Womersley, who appeared by counsel in the guardianship proceedings.

Mrs. Prickett passed away in February, 2003. Her estate was opened that same month in the same court in which the guardianship was pending. In May, 2003, Womersley filed a claim against the Estate for approximately $546,000. Womersley sought reimbursement for various expenses and personal services she rendered to her mother during the time they lived together. Womersley never sought reimbursement from the guardian; the court eventually terminated the guardianship in 2004 after approving the guardian's final accounting.

In 2006, the Estate sought summary judgment with respect to Womersley's claim on two grounds: (1) the expenses and personal services provided by Womersley were, as a matter of law, "gratuitous," and therefore not compensable;[1] and (2) that any claims asserted by Womersley were time-barred because they were not filed in the guardianship. In reply, Wormersley designated certain evidence that the court concluded created genuine issues of material fact as to whether the services were gratuitous as a matter of law. The probate court denied the Estate's summary judgment motion but did, at the Estate's request, certify its order for interlocutory appeal.

---

[1] The parties do not distinguish between the expenses and personal services, and Indiana law appears to extend the presumption that services are gratuitous to expenses as well. Smith v. Husted, 28 Ind. App. 168, 62 N.E. 454, 455 (1902).

The Court of Appeals affirmed. The Estate sought, and we granted, transfer pursuant to Ind. Appellate Rule 58(A). Estate of Prickett v. Womersley, 885 N.E.2d 619, 628 (Ind. Ct. App. 2008).

## Discussion

## I

"Indiana law allows for the appointment of a guardian to act in the best interests of a person who is unable to care for [her]self or for [her] property. See Ind. Code §§ 29-3-1 to -13 (2004). In general, the guardian has power to conduct the protected person's affairs." In re Guardianship of E.N., 877 N.E.2d 795, 798 (Ind. 2007). Indiana Code § 29-3-5-3(a) provides that a court shall appoint a guardian upon two findings: "(1) the individual for whom the guardian is sought is an incapacitated person[2] or a minor; and (2) the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person or minor . . . ." As a fiduciary, the guardian "is appointed by a court to be a guardian or conservator responsible as the court may direct for the person or the property of an incapacitated person or a minor." Id. § 29-3-1-6.

A court in its discretion may limit the scope of a guardianship by restricting the responsibilities and powers a guardian would otherwise have under the Guardianship Code. See I.C. § 29-3-5-3(b) (recognizing that an incapacitated person's welfare may be best served by limiting the guardianship). In order to do so, however, the "limitations must be endorsed on the guardian's letters." Id. §§ 29-3-8-8(b), 29-3-7-37-3. Moreover, letters of guardianship "are evidence

---

[2] Indiana Code § 29-3-1-7.5 defines an " "incapacitated person" as an individual who:

    (1)  cannot be located upon reasonable inquiry;
    (2)  is unable:
        (A)  to manage in whole or in part the individual's property;
        (B)  to provide self-care; or
        (C)  both;
    because of insanity, mental illness, mental deficiency, physical illness, infirmity, habitual drunkenness, excessive use of drugs, incarceration, confinement, detention, duress, fraud, undue influence of others on the individual, or other incapacity; or
    (3)  has a developmental disability (as defined in IC 12-7-2-61).

that the guardian has all, and the protected person does not have any, rights to possess and dispose of the guardianship property." Id. § 29-3-7-6(a). However, it is well established that a guardianship does not preclude a ward from executing a will. See Harrison v. Bishop, 131 Ind. 161, 30 N.E. 1069, 1071 (1892).

A guardianship terminates by reason of the death of the incapacitated person, I.C. § 29-3-12-1(b), and when it does, the guardian is directed to take specific actions. Id. § 29-3-12-1(e). Although its powers cease upon the incapacitated person's death, "the guardian may pay the claimant expenses of administration that are approved by the court and exercise other powers that are necessary to complete the performance of the guardian's trust . . . ." Id. In addition, the guardian "may deliver the remaining property for which the guardian is responsible to the protected person's personal representative . . . ." Id. Finally, the guardian may pay certain expenses that have been approved by the court, including illness and funeral expenses; taxes; statutory allowances to a surviving spouse or children; and any other obligations of the protected person. Id.

Here, the court determined that Mrs. Prickett was an incapacitated person after finding that she "[was] unable to manage in whole or in part her property and [was] unable to provide self care." (App. 37.) Consequently, the court established a guardianship to care for both her person and property, and ordered one limitation on the letters for the co-guardians of her person pursuant to I.C. § 29-3-5-3(b). However, the court imposed no limitations on the power of the guardian of her estate. Conversely, the court did not direct that Mrs. Prickett, an incapacitated person, reserved any such powers over her estate. Therefore, we conclude that 1st Source Bank, as guardian of Mrs. Prickett's estate, held all the power to possess and dispose of Mrs. Prickett's property pursuant to I.C. § 29-3-7-6, including the power to compensate care-providers, and that Mrs. Prickett retained no such power once the guardianship was established.

**II**

The first basis on which the Estate sought summary judgment on Womersley's reimbursement claim was that because Womersley had not filed her claim against the guardianship, she was time-barred from pursuing her claim against the Estate. The Estate points to several

4

provisions of the Guardianship Code[3] concerning a court's authority to order the payment of claims against a protected person or the protected person's property from which the Estate reasons that for a court to entertain Womersley's claim, it would have had to have been filed in the guardianship.

We agree with the both the probate court and the Court of Appeals that the Guardianship Code "does not require a claim for personal services rendered in a non-fiduciary capacity to a protected person to be filed in the guardianship estate rather than in the subsequent probate estate of the deceased protected person." Estate of Prickett, 885 N.E.2d at 624. In particular, we agree that I.C. § 29-3-10-1(d) "does not require a claim to be filed against the guardianship estate in light of the provision that a claim 'may' be filed 'with the court . . . .'" Id. These conclusions are supported by our holding in a somewhat older case, Peters v. Hanlin, 220 Ind. 175, 41 N.E.2d 604, 605 (1942). In Peters, we allowed the ward's sister, who was not the guardian, to file a claim against the estate for services she provided to the ward: "[The court's] approval need not be obtained nor the debt paid prior to the ward's death. If the obligation then remains unsatisfied, it may be enforced against the ward's estate in the hands of an administrator." Id.

We acknowledge that the role and purpose of the guardian of an estate endows the guardian with a competence, if not expertise, when passing on the compensability of claims. But in the absence of legislative direction mandating a guardian's approval, we are apprehensive of the administrative and other practical consequences of ordering a guardian's review of all claims filed in a probate estate that accrue during a decedent's guardianship.

---

[3] The Estate contends that the following provisions of the Guardianship Code establish, as a matter of law, that Womersley was required to file her claim in the guardianship:

(b) Upon order of the court, a guardian shall pay from the protected person's property for which the guardian is responsible any claim against the protected person or the protected person's property, that the court determines has merit.
. . .

(d) Any person having a claim against the protected person or the protected person's property or against the guardian as such may file the claim with the court at any time before the claim is barred by the statute of limitations and, upon proof of the claim, procure an order for its allowance and payment from the guardianship property.

I.C. § 29-3-10-1.

Womersley was not required to pursue her claim in the guardianship proceeding; she properly filed her claim against her mother's estate. Therefore, the Estate was not entitled to summary judgment on this issue.

**III**

The second basis on which the Estate sought summary judgment on Womersley's reimbursement claim was that because Womersley had gratuitously served her mother, she was not entitled to compensation for her services.

We recognize that in general, "[w]here one accepts valuable services from another the law implies a promise to pay for them." Schwartz v. Schwartz, 773 N.E.2d 348, 354 (Ind. Ct. App. 2002) (quoting Estate of Hann v. Hann, 614 N.E.2d 973, 979 (Ind. Ct. App. 1993)). Indeed, this principle appropriately applies to general creditors. "However, where the parties are family members living together, and the services are rendered in the family context, no implication of a promise to pay by the recipient arises." Id. at 355. Instead, in these circumstances, the rebuttable presumption is that services are gratuitous. See Hill v. Hill, 121 Ind. 255, 23 N.E. 87, 88-89 (1889); Cole v. Cole, 517 N.E.2d 1248, 1250 (Ind. Ct. App. 1988) (citing Schroeder v. Schroeder, 117 Ind. App. 410, 70 N.E.2d 764, 765 (1947)). The public policy advanced by this presumption is that family members "have reciprocal, natural, and moral duties to support and care for each other." Cole, 517 N.E.2d at 1250.

To rebut the presumption that her services were rendered gratuitously, Womersley relied on the typed and signed "Statement of Margaret H. Prickett." The statement expressed Mrs. Prickett's desire that the guardian of her estate compensate Womersley for her services. Womersley submitted affidavits of two people who witnessed Mrs. Prickett's execution of the statement and opined that Mrs. Prickett had been "well aware of what she was doing and her intentions when she executed the [statement]." (App. at 66, 69.)

Our state has traditionally recognized only one way to rebut the presumption that services were rendered gratuitously, which requires evidence of an express or implied contract. Schroed-

6

er, 117 Ind. App. at 412, 70 N.E.2d at 765. Rebutting the presumption in this manner requires the family member to demonstrate two specific elements: "an intention on the part of recipient of the services to pay or compensate therefor, and an expectation of pay or compensation on the part of the one rendering the services." Grout v. Solon, 131 Ind. App. 650, 174 N.E.2d 593, 594 (1961). In the present case the Court of Appeals suggested two additional ways to rebut the presumption that services rendered by a family member are gratuitous: "Where a claimant has paid bills and debts on the decedent's behalf," Estate of Prickett, 885 N.E.2d at 627 (citing Forker v. Berkes, 111 Ind. App. 92, 38 N.E.2d 296 (1941));[4] and "when the ward had requested services and the services were necessary," Estate of Prickett, 885 N.E.2d at 627-28 (citing Wyneken v. Long, 400 N.E.2d 1147, 1148 (Ind. Ct. App. 1980)). Based on the second of these two points and relying on Wyneken, the Court of Appeals concluded that Mrs. Prickett's desire for Womersley to be paid expressed in her written statement rebutted the presumption that Womersley had acted gratuitously. Id.

**A**

Traditionally, the sole method of rebutting the presumption requires evidence of either an implied or express contract formed by both intention and expectation. Grout, 131 Ind. App. at 655, 174 N.E.2d at 594. Mrs. Prickett, however, could not enter into contracts at the time she executed the statement because she had already been adjudicated an incapacitated person under the Guardianship Code. See I.C. § 29-3-8-5(b) ("Every contract, sale, or conveyance executed by a protected person is void . . . ."). Womersley maintains that the Court of Appeals in Schwartz "recognized well-established law holding that an implied contract can exist between the protected person and provider of services." (Resp't Pet. Transfer 3.) See Schwartz v. Schwartz, 773 N.E.2d at 355. Though this contention may be true for general creditors or non-family members, when the provider is a family member, the implied contract must exist between that person and the incapacitated person's guardian.

---

[4] Contrary to our colleagues, we do not find a claimant having paid bills and debts on a decedent's behalf to be a recognized exception to the presumption that a family member's services are rendered gratuitously. The Forker case does not stand for this proposition.

This was in fact the situation in Schwartz. The Schwartz court recounted the providing family member's conversation with the guardian, not the incapacitated person, regarding compensation. Schwartz, 773 N.E.2d at 355-56 ("[D]id you ever have any conversations with the estate guardian about compensation for her coming in there? . . . Yes."). The court then concluded that the guardian and family member had "established the existence of an implied contract for services rendered on [the incapacitated person's] behalf." Id. at 356. In this case, Womersley failed to produce evidence that she had an express or implied contract with her mother's guardian. Therefore, she failed to rebut the presumption under the traditional analysis.

**B**

As noted supra, the Court of Appeals relied on its decision in Wyneken v. Long, 400 N.E.2d 1147, to hold that the presumption that family services are provided gratuitously may be rebutted by evidence that the "ward had requested services and the services were necessary." Estate of Prickett, 885 N.E.2d at 627-28. It is true that Wyneken said that "[a]lthough the law will not enforce an express contract against an incompetent, the law will allow a recovery against the incompetent's estate for the reasonable value of necessary services rendered at the request of the incompetent." 400 N.E.2d at 1148 (citing Rautenkranz v. Plummer, 75 Ind. App. 269, 130 N.E. 435 (1921)). But the Court of Appeals was wrong to rely on Wyneken without examining its factual context.

Grout and Schwartz each bears a close factual resemblance to this case. The family member seeking reimbursement in Grout was the ward's son; in Schwartz, the ward's daughter and granddaughter sought reimbursement. The factual context for Wyneken (and the Rautenkranz case on which Wyneken relies) is markedly different. In Wyneken, the ward requested a lawyer's services to challenge the "existence or the propriety of the guardianship." Wyneken, 400 N.E.2d at 1148. (In Rautenkranz, too, the ward had requested legal services to challenge the guardianship and remove the guardian. 75 Ind. App. 269, 130 N.E. at 436.) Neither Wyneken nor Rautenkranz involved family members seeking to rebut the presumption that family services are rendered gratuitously; they involved claims that services rendered to a ward were compensable even if not approved by the guardian. We can readily see that claims not honored by a guar-

8

dian might well be approved on the facts of <u>Wyneken</u> and <u>Rautenkranz</u> where, to quote the <u>Rautenkranz</u> court, lawyers should be able to "recover compensation for services rendered in such an action, as for necessaries, if such services are faithfully and intelligently performed." <u>Id.</u> at 436. But these cases suggest no grounds for rebutting the presumption that family services are rendered gratuitously.

We acknowledge that <u>Wyneken</u> also suggests that exigent circumstances may warrant compensation for necessary services that were performed without approval of the guardian. 400 N.E.2d at 1148. But in the absence of the exigent circumstances, the guardian's approval is required in order to secure compensation for those services. Like implied contracts under <u>Grout</u> and <u>Schwartz</u>, the exigent circumstances exception straightforwardly applies when the provider is a non-family member or general creditor. When the provider is a family member, however, further evidence is needed to rebut the presumption that the services were gratuitous. An exception on a showing of no more than exigent circumstances would consume the presumption's rule.

In any event, Womersley presented no evidence of any exigent circumstances to justify the failure to obtain the guardian's approval of her compensation. As such, there is no question of whether her services were "necessaries," to use the <u>Wyneken</u> formulation. That is, even under <u>Wyneken</u>, 1st Source Bank's approval would have been required to secure payment for her services.

**C**

Finally, Womersley relies on a statutory change and other Indiana cases to argue that "when a court determines that a person is incapacitated, no presumption or inference arises that the person is not mentally competent." (Resp't Pet. Transfer 6.) She points to the fact, which we acknowledge, that the word "incompetent" in Guardianship Code was replaced with "incapacitated" in 1989. <u>In re Guardianship of Hickman</u>, 805 N.E.2d 808, 819 (Ind. Ct. App. 2004). We have defined "incompetent" as "one 'who is under the age of eighteen years or is incapable by reason of insanity, mental illness, or other incapacity of either managing his property or caring for himself or both.'" <u>Polick v. Ind. Dep't of Highways</u>, 668 N.E.2d 682, 684 (Ind. 1996) (quot-

9

ing Ind. Code Ann. § 34-4-16.5-2(3) (West 1986)). On the other hand, we have observed that "incapacity . . . under its statutory definition exists – regardless of the person's mental competence – when a person is unable to provide self-care because of physical illness or infirmity." Polick, 668 N.E.2d at 684 (citing I.C. §§ 29-3-1-7.5, 34-4-16.5-8).

We do not see the distinction between "incompetency" and "incapacity" as affecting the outcome of this case. Indeed, Womersley's assertion runs counter to both the facts of this case and the overall purpose of a guardian of an estate. If the probate court had found that although physically incapacitated, Mrs. Prickett was still able to manage her estate, it would have either designated a guardian over only her person, placed limitations on the letters of the guardian of her estate, or directed that she reserved certain powers. In the absence of such limitations or direction, we must conclude that the court appointed a guardian over Prickett's estate because she was unable to manage her property. The appointment of a guardian of her estate deprived Mrs. Prickett of the power to dispose of her property. The Court of Appeals was thus incorrect to say that "the Estate presented no evidence establishing that Prickett was incapacitated to the extent that she could not make a legally significant request." Estate of Prickett, 885 N.E.2d at 628. The very fact that a guardian for her estate had been appointed established, as a matter of law, that she could not make a legally significant request.

**Conclusion**

The evidence Womersley designated does not as a matter of law rebut the presumption that she gratuitously served her mother. We reverse the trial court's denial of summary judgment and remand for proceedings consistent with this opinion.

Shepard, C.J., and Dickson and Boehm, JJ., concur.

Rucker, J., concurs in result without separate opinion.