CINCINNATI INSURANCE COMPANY, Appellant–Plaintiff/Counterdefendant,

v.

James and Jan TROSKY, as personal representatives of the Estate of Kyle Trosky, and individually as parents of Kyle Trosky, Kaitlin A. Culpepper, American Select Insurance Company, State Farm Mutual Insurance Company, Pamela Brown, Stewart Brown, and State Farm Fire & Casualty Company, Appellees–Defendants/Counterplaintiffs.

No. 29A02–0902–CV–148.

Court of Appeals of Indiana.

Nov. 25, 2009.

Richard R. Skiles, Janet M. Prather, Skiles Detrude, Indianapolis, IN, Attorneys for Appellant.

John F. Townsend, III, Townsend & Townsend, Charles A. Carlock, Laura S. Reed, Riley Bennett & Egloff, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge.

Cincinnati Insurance Company appeals from the trial court's order in a declaratory judgment action denying Cincinnati's and State Farm Fire's motions for summary judgment, and granting James and Jan Trosky's motion for summary judgment against Cincinnati and State Farm Fire, and granting Kaitlin Culpepper's cross-motion for partial summary judgment against Cincinnati. Cincinnati raises the following issue for our review: Did the trial court correctly conclude that excess underinsured motorist coverage (UIM coverage) in a personal liability umbrella policy was available where the underlying insurance policy provided UIM coverage, but no UIM benefits were paid because the total coverage limits had been exhausted instead by set-offs and liability payments?

We affirm.

In March 2004, Courtland Brown, Kyle Trosky, and Kaitlin Culpepper were returning to Indiana from a trip to Florida in a vehicle owned by Courtland Brown's parents, Pamela and Stewart Brown. Near Daytona Beach, Florida, Brown, Trosky, and Culpepper were involved in a vehicle collision with a vehicle owned by the Florida Highway Patrol (FHP) and operated by FHP Trooper Kurt Glaenzer. At the time of the accident, Culpepper was a permissive driver of the Browns' vehicle, and Brown and Trosky were passengers. As a result of the collision, Trosky was killed and Culpepper was injured.

FHP is a self-insured entity with a statutory limit of liability in the amount of $100,000 per claim, $200,000 per occurrence. Fla. Stat. Ann. § 768.28(5) (West 2006). Culpepper was insured by State Farm Mutual Automobile Insurance Company under her father's policy with liability limits of $100,000 per person, $300,000 per accident and UIM limits in the amount of $100,000 per person and $300,000 per accident. Trosky was insured under his policy with State Farm Auto with liability limits of $100,000 per person and $300,000 per accident, with UIM limits in the same amounts. The Browns had a policy with American Select Insurance Company (the ASIC) which had a total coverage limit of $500,000 applying to either liability or UIM coverage. Under the ASIC policy, Culpepper and Trosky qualified as insureds because they were occupants of a vehicle owned by the Browns at the time of the accident. The Troskys also had a personal liability umbrella policy (PLUP) with State Farm Fire which provided excess UIM coverage of $2,000,000. The Browns had a PLUP with Cincinnati which supplied excess UIM coverage of $2,000,000.

In January 2005, Culpepper filed her liability suit in Volusia County, Florida against the FHP alleging that FHP Trooper Glaenzer negligently operated the FHP patrol car. The FHP offered to pay its per person tort liability cap of $100,000 to Culpepper to settle her suit. ASIC, the Browns' insurer, advanced that amount to Culpepper in October of 2005, and the FHP reimbursed ASIC for that advance. Culpepper and the FHP executed a settlement agreement and Culpepper released the FHP for its alleged fault in the accident, excluding UM/UIM claims against ASIC and Cincinnati. State Farm Auto subsequently paid Culpepper the $100,000-per-person limit under the UIM coverage of her father's policy. Culpepper also received $35,000 under the ASIC policy's bodily injury liability coverage.

In February 2005, the Troskys, individually and as personal representatives of the Estate of Kyle Trosky, filed a liability suit in Volusia County, Florida against Culpepper and the Browns for the death of Kyle Trosky, alleging that Culpepper was negligent in the operation of the vehicle owned by the Browns, causing the accident. The Troskys later added the allegation that FHP Trooper Glaenzer was negligent in the operation of his FHP patrol car. In October 2005, State Farm Auto paid the Troskys $100,000, the per-person limit of Culpepper's father's liability coverage under his policy, and on December 5, 2005, the Troskys released all liability claims against Culpepper, excluding UM/UIM claims. FHP paid $90,000 to the Troskys, exhausting the FHP statutory limit of liability per occurrence,[1] and the Troskys released all claims against the FHP. The Troskys received $275,000 under the Browns' liability coverage through ASIC for the release of all claims, individually and on behalf of the estate, against Culpepper, the Browns, and ASIC.[2] The Trosky liability suit against Culpepper and the Browns was dismissed with prejudice on January 31, 2006. The Trosky liability suit against the FHP was dismissed with prejudice on January 30, 2006.

On September 21, 2005, Cincinnati filed a complaint for declaratory judgment in Hamilton County, Indiana. In March of 2006, the Troskys filed a complaint in Hamilton County, Indiana, against State Farm Auto seeking to recover under Kyle Trosky's State Farm Auto policy's UIM provision for his wrongful death alleging negligence on the part of the FHP. They also sought coverage under the State Farm Fire PLUP and the Cincinnati PLUP. Cincinnati was allowed to intervene in the Troskys' action against State Farm Auto. *Id.* at 10. State Farm Fire was allowed to intervene as a defendant in Cincinnati's declaratory judgment action. In April of 2007, the trial court granted Culpepper's motion for leave to file her counterclaim against Cincinnati and her cross-claims against the Troskys. Culpepper seeks to recover only under the Cincinnati PLUP.

Cincinnati moved for summary judgment against both Culpepper and Trosky as to their UIM claims and numerous motions and responses were filed by the parties. The trial court heard argument on the pending motions, issuing its order on December 11, 2008. Cincinnati now appeals.

 Our supreme court has set forth the standard of review on a summary judgment ruling as follows:

> On appeal, the standard of review for a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. Review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H). We must carefully review a decision on a summary judg-

---

1. The FHP paid the remaining $10,000 to Patricia Samson ($7,800) and VMS Maintenance Systems, Inc. ($2,200). *Appellant's Appendix* at 435.

2. The set-off provision of the ASIC policy reduced the $500,000 to $310,000 due to the Troskys' receipt of $100,000 from Culpepper's State Farm Auto policy, and $90,000 from the FHP. ASIC paid $275,000 to the Troskys and $35,000 to Culpepper, exhausting the total coverage limits. *Id.* at 300.

ment motion to ensure that a party was not improperly denied its day in court. *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind.2003) (some citations omitted). The party seeking summary judgment bears the burden of making a prima facie showing, by specifically designated evidence, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Splittorff v. Fehn*, 810 N.E.2d 385 (Ind.Ct.App.2004). Finally, the party appealing from a summary judgment decision bears the burden of persuading this court that the ruling was erroneous. *Id.*

■ The interpretation of an insurance policy is generally a question of law appropriate for summary judgment. *Liberty Mut. Ins. Co. v. Michigan Mut. Ins. Co.*, 891 N.E.2d 99 (Ind.Ct.App.2008). We review an insurance policy under the same rules of interpretation applied to other contracts. *Id.* If the language is clear and unambiguous we will apply the plain and ordinary meaning. *Id.*

First, Cincinnati argues that Culpepper is not entitled to excess UIM coverage because the underlying State Farm Auto UIM per person coverage, $100,000, was the same amount paid to her by the FHP, $100,000. Culpepper also was an insured under the Browns' ASIC policy as a permissive driver of their insured vehicle. Culpepper seeks to recover from the Cincinnati PLUP, and the ASIC policy as the proper underlying insurance for this analysis and determination. Consequently, we need not address Cincinnati's argument about Culpepper's coverage under her father's State Farm Auto policy.

■ Cincinnati claims that the trial court erred by concluding that excess UIM coverage in the Cincinnati PLUP was available to the Troskys and Culpepper where the Browns' ASIC policy provided for UIM coverage, but no UIM benefits

were paid because the total coverage limits had been exhausted by liability payments. More specifically, Cincinnati argues that UIM coverage was "denied" by ASIC because the total coverage limits were exhausted before any UIM payments were made on the underlying policy, thus relieving Cincinnati of its obligation to provide excess UIM coverage to the Troskys and Culpepper.

The ASIC policy provides as follows:

A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury** [s]ustained by an **insured**[ ] and [c]aused by an accident.

*Appellant's Appendix* at 298 (emphasis in original).

The Cincinnati PLUP contains a follow form provision which reads as follows:

C. This insurance applies in excess of and only to the extent insurance is provided by the 'underlying insurance' as scheduled in Schedule A–Schedule of Underlying Insurance and subject to all its terms, conditions and limitations other than the limit of insurance or any other provision not consistent with this policy.

*Id.* at 307. We believe that the trial court correctly determined that the exhaustion of the ASIC policy's total coverage limits did not relieve Cincinnati of its obligation to provide excess UIM coverage. The ASIC policy provided for UIM coverage, but did not pay out UIM benefits because of the limit of insurance. While Cincinnati would have this court interpret the Cincinnati PLUP language to read that its excess coverage applies only if underlying UIM coverage is *paid*, we decline to do so as the policy language clearly states that it

applies to the extent underlying insurance "is provided." *Id.*

A panel of this court stated as follows: [I]f the insuring clause does not extend coverage, one need look no further. If coverage exists, exclusions must then be considered. If an exclusion excludes coverage, an exception to the exclusion may re-grant coverage. However, the entire process must begin with an initial grant of coverage via the insuring clause; otherwise, no further consideration is necessary.

*Amerisure, Inc. v. Wurster Constr. Co., Inc.*, 818 N.E.2d 998, 1005 (Ind.Ct.App. 2004). Since we have determined that the trial court correctly determined that there was an initial grant of coverage, we next examine the exclusions to coverage argued by Cincinnati.

■ Cincinnati contends that the exclusion of "government vehicles" from the definition of "underinsured motor vehicle" in the ASIC and State Farm policies relieves Cincinnati of its obligation to provide excess UIM coverage as the FHP vehicle involved was a "government vehicle." Culpepper's State Farm Auto policy, Kyle Trosky's State Farm Auto policy, and the ASIC policy each include a "government vehicle exclusion." *Appellant's Appendix* at 194, 223 (State Farm Auto language: "An underinsured motor vehicle does not include a land motor vehicle owned by any government or any of its . . . agencies"); *Id.* at 299 (ASIC language: "Underinsured motor vehicles does not include any vehicle or equipment [o]wned by any governmental unit or agency"). Cincinnati further argues that the Troskys and Culpepper are not "legally entitled to collect" any money from the FHP because the statutory limit has been satisfied, also relieving Cincinnati of its obligation to provide any excess UIM coverage. *Appellant's Brief* at 26. Culpepper's and Kyle

Trosky's State Farm Auto policies additionally state, "We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." *Appellant's Appendix* at 193, 223.

As an initial matter, the trial court concluded, as Culpepper and the Troskys suggested, that Florida substantive law should be applied to resolve the above arguments. Cincinnati argues that the trial court should have applied Indiana substantive law. There is no choice-of-law provision in the insurance contracts.

■ First, a choice-of-law analysis is necessary only when there is a conflict between the laws of the states in question. *Am. Employers Ins. v. Coachmen Indus.*, 838 N.E.2d 1172 (Ind.Ct.App.2005). Here, under Florida substantive law, the government vehicle exclusion is void as against public policy. *See Young v. Progressive Southeastern Ins.*, 753 So.2d 80 (Fla.2000). No Indiana case has addressed this question.

■ When faced with a choice-of-law question, the decision is made by the courts of the state in which the suit is pending. *Schaffert by Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230 (Ind.Ct. App.1997), *trans. denied.* Since 1978, this court has generally followed the Restatement (Second) of Conflict of Laws (1971) ("Restatement") when confronted with a choice-of-law issue. *See Utopia Coach Corp. v. Weatherwax*, 177 Ind.App. 321, 379 N.E.2d 518 (1978). Restatement Section 6 lists several factors to be considered by any court faced with a choice of law issue:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of

those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

The Restatement is even more specific on the subject of choice-of-law questions in contract actions. Under Section 188, "The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." In determining the state that has the most significant relationship to the transaction and the parties under the principles stated in Section 6, the contacts to be taken into account include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

*Id.*

The Restatement is even more specific with regard to contracts for fire, surety, or casualty (including liability) insurance. Section 193 has been described as addressing "that special subset of contracts that involve insurance." *Zurich Ins. v. Shearson Lehman Hutton,* 84 N.Y.2d 309, 318, 642 N.E.2d 1065, 1069, 618 N.Y.S.2d 609, 613 (1994). Section 193 provides:

The validity of a contract of fire, surety, or casualty insurance and the rights cre-ated thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles state in Section 6 to the transaction and the parties, in which event the local law of the other state will be applied.

■ Here, the only contact with Florida was the accident itself. Although the policy territory includes the United States, the insureds reside in Indiana, the insurance policies were issued in Indiana, and the insured vehicle was garaged primarily in Indiana. Consequently, the trial court erred to the extent it found that Florida law applied. *See Pennington v. Am. Family Ins. Group,* 626 N.E.2d 461 (Ind.Ct. App.1993) (Indiana had most intimate contacts as insured purchased and executed policies with Indiana agent of insurer in Indiana and insured lived in Indiana; accident was only contact with Kentucky).

That said, the trial court also found, in the alternative, that should Indiana law apply, the government vehicle exclusion is void as against public policy in Indiana, and that Culpepper and the Troskys were legally entitled to recover notwithstanding the statutory tort limit for liability of government entities. Ind.Code Ann. § 34–13–3–1 *et seq.* (Indiana's Tort Claims Act). We turn to those considerations next.

In *Losiniecki v. American States Ins. Co.,* 610 N.E.2d 878 (Ind.Ct.App.1993), a panel of this court held that an insured was not entitled to uninsured motorist coverage because the insured had no right of action against the tortfeasor who was protected by a sovereign immunity defense. Losiniecki was injured while a passenger on a motorcycle that collided with a vehicle driven by a police officer. This case was

decided, however, prior to our Supreme Court's decision in *Quakenbush v. Lackey*, 622 N.E.2d 1284 (Ind.1993), a case in which the court held that a governmental unit and its police officer were not immune from liability for injuries caused by the officer's negligent operation of a police vehicle while pursuing a fleeing suspect. Clearly, Culpepper and the Troskys had a right of action against the FHP, successfully asserted that right, and received payment from the FHP.

An issue very similar to the one before us was addressed by the supreme court of New Mexico in *Boradiansky v. State Farm Mut. Auto. Ins. Co.*, 141 N.M. 387, 156 P.3d 25 (2007). In *Boradiansky*, the insured was severely injured in a motor vehicle collision when a sheriff's deputy, operating a government vehicle, ran a red light and broadsided the insured's car. The insured settled with the governmental defendant for less than the statutory cap, and sought additional payments from her insurer for her damages in excess of the statutory cap for government defendants. The supreme court of New Mexico held that the "exclusion of all government-owned vehicles from the definition of an 'uninsured motor vehicle' is unenforceable because it violates the public policy illustrated within New Mexico's Uninsured Motorist Act." 156 P.3d at 25–26. The court went on to hold that the insured was legally entitled to recover damages notwithstanding the limitations imposed by the tort claims act on recovery against the State. 156 P.3d at 26. The court noted that a majority of the other states that have addressed government-owned vehicle exclusions have found them contrary to the purpose of uninsured motorist coverage statutes. *Id.; see e.g., Michigan Millers Mut. Ins. Co. v. Bourke*, 607 So.2d 418 (Fla.1992) (Florida supreme court held that a UM carrier was not permitted to avoid liability under policy by invoking tortfeasor's sovereign immunity defense to claims in excess of $100,000 per person); *Kyrkos v. State Farm Mut. Auto. Ins. Co.*, 121 Wash.2d 669, 852 P.2d 1078 (Wash. 1993) (government vehicle exclusion deemed void in policy which reduced UIM coverage beyond the statutory minimum); *Rueschemeyer v. Liberty Mut. Ins. Co.*, 673 A.2d 448 (R.I.1996) (government vehicle exclusion in policy is void as against public policy because contrary to legislative intent of UIM statute); *West Am. Ins. Co. v. Popa*, 352 Md. 455, 723 A.2d 1 (Md.Ct.App.1998) (government vehicle exclusion from UIM definition in policy was void, and insured legally entitled to recover despite statutory cap on state's liability); *Nationwide Mut. Ins. Co. v. Hatfield*, 122 S.W.3d 36 (Kentucky 2003) (sovereign immunity did not prevent recovery of UIM benefits, and government vehicles exclusion from definition of UIM void); *Watters v. Dairyland Ins. Co.*, 50 Ohio App.2d 106, 361 N.E.2d 1068 (Ohio Ct.App.1976) (government vehicle exclusion from UIM definition void as against public policy); *Franey v. State Farm Mut. Auto. Ins. Co.*, 5 Ill.App.3d 1040, 285 N.E.2d 151 (Ill.App. 1972) (provision in policy that UIM coverage did not apply to automobiles owned by the State is unduly restrictive in light of statutory UM coverage requirement). *But see, Cont'l W. Ins. Co. v. Conn*, 262, Neb. 147, 629 N.W.2d 494 (Neb.2001) (government vehicle exclusion in policy not against public policy where similar exclusion was contained in Nebraska's Uninsured and Underinsured Motorist Insurance Coverage Act). We agree with the cases from other jurisdictions that hold that the government vehicle exclusion from the definition of underinsured motorist in insurance policies is void as against public policy.

■ Statutory tort claims caps serve to limit the financial exposure of a state's treasury for torts committed by state offi-

cials and employees. *See West Am. Ins. Co. v. Popa*, 352 Md. 455, 723 A.2d 1. Insureds pay premiums to their insurers to make up the difference between an injured insured's damages and the tortfeasor's liability coverage up to the limit of the insured's UIM coverage. *Id.* To exclude government vehicles from the definition of underinsured motor vehicle denies the insured the coverage for which he bargained and therefore is void. Our UM/UIM statutes mandate minimum coverage, and the insurance policy exclusions for government-owned vehicles deny coverage, where it is required by statute. These exclusions conflict with the express language of the statute by narrowing the definition of underinsured motor vehicles, and are void as against public policy.

▬ Additionally, we agree with the cases from other jurisdictions holding that the sovereign immunity defense is not available to UIM carriers who argue that once the statutory cap has been paid by the governmental unit, the insured is no longer "legally entitled to recover." Those cases adopt a broader definition of the policy language, holding that "legally entitled to recover" means only that the insured establish fault on the part of the uninsured or underinsured motorist, and establish the amount of his or her damages. *See e.g., Karlson v. City of Oklahoma City*, 711 P.2d 72 (Okla.1985); *Winner v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606 (1973); *Booth v. Fireman's Fund Ins. Co.*, 253 La. 521, 218 So.2d 580 (1968); *West Am. Ins. Co. v. Popa*, 352 Md. 455, 723 A.2d 1 (1998).

▬ Cincinnati argues that *Bush v. State Farm Mutual Auto. Insurance Company*, 905 N.E.2d 1003 (Ind.2009), supports its position that Culpepper and the Troskys are not legally entitled to recover. *Bush* was a case involving a UIM claim by the parents of an adult decedent in a wrongful death action. The parents were not legally entitled to recover because: 1) the decedent was not an insured under the parents' policy; and 2) no wrongful death estate was opened prior to the expiration of the statute of limitations. *Id.* Culpepper and the Troskys successfully asserted their claims against the FHP. Consequently, *Bush* is inapposite here.

Turning to our statutes, Indiana Code Ann. § 27–7–5–4(b) defines an "underinsured motor vehicle" as an insured motor vehicle where the limits of coverage available for payment to the insured under all bodily injury liability policies covering persons liable to the insured are less than the limits for the insured's underinsured motorist coverage at the time of the accident, but does not include an uninsured motor vehicle. We note that there is no statutory exclusion for government owned vehicles from Indiana's statutory definition of an underinsured motor vehicle.

▬ Furthermore, "the underlying purpose of UIM coverage 'is to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy of liability insurance.'" *Corr v. Am. Family Ins.*, 767 N.E.2d 535, 540 (Ind.2002). "[A]dequate in this context is defined by the insured's underinsurance policy." *Grange Ins. Co. v. Graham*, 843 N.E.2d 597, 602 (Ind.Ct.App.2006). "[T]he goal in situations such as this is to give the insured at least the same coverage as if his or her own underinsurance policy was the only one that applied." *Id.*

▬ The amount actually available for payment to Culpepper and the Troskys from the FHP was $200,000. Comparing that per-accident liability amount to the per-accident ASIC UIM policy limits under which both Culpepper and the Troskys made a claim, the FHP vehicle is underinsured. The ASIC policy did not contain a per-person or per-accident limit, but in-

stead provided total coverage of $500,000 for UIM or liability coverage.

Thus, having determined that the FHP vehicle was underinsured, we turn to the UIM coverage available. The ASIC policy provided for UIM coverage, but no payments were made as the policy limits were exhausted by liability payments. The Cincinnati PLUP, through its follow-form provision, made available additional UIM coverage up to $2,000,000. As a consequence, the trial court correctly determined that Culpepper was entitled to recover under the Cincinnati PLUP.

The Troskys sought benefits under Kyle's State Farm Auto policy's UIM provision for his wrongful death, and under the State Farm Fire PLUP and the Cincinnati PLUP. The trial court found that the Troskys could recover under all three policies, and that the Troskys should first recover under Kyle's State Farm Auto policy and then receive pro rata coverage between the Cincinnati PLUP and their State Farm Fire PLUP. Cincinnati argued that the two PLUPs should provide coverage on a pro rata basis until the policy limits are exhausted, and this is what the court decided. We agree with this determination.

In summary, Indiana substantive law applies here. Further, we hold that the government vehicle exclusion from the definition of underinsured motorist in insurance policies is void as against public policy in Indiana. Lastly, we hold that the exhaustion of a tortfeasor's statutory tort cap liability does not mean that an insured is not "legally entitled to recover" as that term is used in insurance policies.

Judgment affirmed.

BAKER, C.J., and RILEY, J., concur.