Vaidik, Chief Judge,
concurring in result.'
I concur in the result reached by the majority. I write separately to express my view that the rebuttable presumption that services are gratuitous should apply to this case because although Woods and Henry were not married, they lived together as a couple and operated as a family for fourteen years.
The record shows that shortly after Phyllis’s death in February 1998, Woods started doing' Henry’s laundry. As time went on, Woods’s jobs progressed to cleaning Henry’s house, to mowing his lavshij to eventually becoming his caregiver. Since Henry had paid Woods for taking care of Phyllis, she expected to be paid for this work as well, but Henry never paid her. After Henry suffered a .heart attack in September 1998, Woods moved in with Henry to help with his recovery. This resulted in them spending more time together, which they both enjoyed. They started going on vacations together, went out socially as a couple, entertained in Henry’s home as a couple, attended church as a couple, went to funerals together, and sent Christmas cards signed in both of their names. Many of their friends thought of them as boyfriend and girlfriend, and Henry sometimes referred to Woods as his girlfriend. Henry’s family included Woods in celebrating the holidays. According to one of Henry’s friends, although Henry said he was not going to marry Woods, he said she would be well taken care of. As Henry’s health declined (he had a second heart attack in 2010), Woods did more for Henry, especially in the last two years of his life. She accompanied him to his doctor appointments, monitored his medications, and took care of his sores. Henry died in 2012. Woods was listed in his obituary as his “loving companion.” Appellant’s App. Vol. II p. 41. .
Thereafter, Woods filed a' claim against Henry’s ¿state for fourteen years of services and supplies she provided to Henry. The probate court partially granted Woods’s claim, awarding her $125,400.
In general, where one accepts valuable services from another, the law implies a promise to pay for them. Estate of Prick-ett v. Womersley, 905 N.E.2d 1008, 1012 (Ind. 2009). But where the parties are family members living together and the services are rendered, in the family context, no implication of a promise to pay by the recipient arises. Id. Instead, the rebut-table presumption is that the services aye gratuitous. Id. In order to rebut the- presumption, there must be evidence of an express or implied contract. Id.
The probate court recognized this general rule. It found that although Woods was not Henry’s relative, the presumption nevertheless applied because “the parties live[d] together in a family relationship.” Appellant’s App. Vol. II p. 29. The court noted that although “[c]aregivers and clients often grow fond of each other,” “this relationship was more than caregiver *1209 and client”; “it was more like girlfriend and boyfriend.” Id. I believe that the probate court correctly applied the rebuttable presumption to this set of facts, because Woods and Henry lived together and “operated as a family” for fourteen years. Id. at 25. The fact that they were not married does not change the fact that they lived together as a family for an extended period of time. See Kitch v. Moslander, 114 Ind.App. 74, 50 N.E.2d 933, 938 (1943) (finding that ex-husband and ex-wife who lived together after living apart were family and that there was an implied contract for services ex-wife provided to ex-husband for over thirty years). Accordingly, I respectfully disagree with the majority that the presumption that services aré gratuitous does not apply here because there is “no evidence of a biological, marital, or adoptive relationship.” Op. at 1206.
Further, I agree with the probate court that Woods rebutted this presumption. The court explained that the presumption could be overcome by proving an implied contract. Appellant’s App. Vol. II p. 29 (“Having been involved as a couple rather than patient and caretaker may create a presumption that the services were performed gratuitously, but that presumption can also be overcome by proving an express or implied contract”). By then finding an implied contract in the amount of $125,400, the court found this presumption to be rebutted. Because the majority affirms the $125,400 claim for Woods, I concur in the result reached by the majority.