

FILED

May 19 2017, 10:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**ATTORNEY FOR APPELLANT**

Christopher T. Smith
Smith Davis LLC
Greenfield, Indiana

**ATTORNEYS FOR APPELLEE**

C. Dennis Wegner
C. Dennis Wegner & Assoc., P.C.
Indianapolis, Indiana

Jonathan E. Palmer
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |
|---|---|
| The Estate of George A. Henry, Deceased,<br>*Appellant-Defendant,*<br><br>v.<br><br>Nadene Woods,<br>*Appellee-Plaintiff.* | May 19, 2017<br><br>Court of Appeals Case No.<br>49A05-1604-PL-810<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Steven R. Eichholtz, Judge<br><br>Trial Court Cause No.<br>49D08-1202-EU-4311<br>49D08-1208-PL-31442 |

**Bailey, Judge.**

# Case Summary

Nadene Woods ("Woods") filed a claim for services against the Estate of George Henry ("the Estate"), which was disallowed and then contested in a bench trial. The Marion County Superior Court, Probate Division, partially allowed the claim, and the Estate appealed. We affirm.

# Issues

The Estate presents three issues for review, which we restate as the following:

I.     Whether the probate court erroneously evaluated the claim under a standard applicable to general creditors as opposed to a standard for family members incorporating a presumption that services were gratuitous;

II.    Whether a finding of fact is clearly erroneous; and

III.   Whether the conclusion that Woods is entitled to partial recovery upon her claim is clearly erroneous.

# Facts and Procedural History

In 1944, George Henry ("Henry") married Phyllis Henry ("Phyllis"); she was subsequently diagnosed with cystic fibrosis. By 1998, Phyllis needed in-home assistance while Henry pursued his law practice. Henry hired a housekeeper to clean one day per week and paid her $90.00. He hired Woods to personally

assist Phyllis. Four days per week, Woods prepared lunch, emptied Phyllis' catheter, changed bed linens, and did some errands. Henry paid Woods $150.00 per week.

[4] Phyllis died on February 4, 1998. Woods asked Henry if her services were still needed and he replied in the negative. However, after a week or two, Henry confessed to a friend that he was running out of clothing and he didn't know how to do laundry. Henry invited Woods over for a home-cooked meal. He then asked Woods to do his laundry and she obliged.

[5] As time went on, Woods took on other household duties. Also, she and Henry began to go out socially. Customarily, Henry paid for Woods' meals when they dined out. At some point, Woods asked Henry about payment and he responded, "I feed you, don't I?" (Tr. at 317.)

[6] In the fall of 1998, Henry suffered a heart attack. He recovered such that he could continue practicing law, but as time went on he needed additional assistance with daily tasks. Henry asked Woods to spend more time at his residence. Eventually, Woods moved into Henry's house. She kept some of her possessions there, but always maintained a separate residence. Henry continued working until his mid-eighties. At times, Woods took work providing in-home services for elderly clients.

[7] Sometime in 2006, Henry began having some episodes of falling and he also began to need assistance to rise from a chair. In early 2010, he began experiencing chest pains. In December of 2010, Henry had a second heart

attack. Henry survived the second heart attack, but became more sedentary. He developed pressure sores, and Woods tended to those, after receiving instruction at the St. Francis Wound Care Center. Henry died on January 5, 2012, at the age of ninety-two. His will was admitted to probate in Marion County.

[8] Woods filed a claim against the Estate, seeking compensation for fourteen years of services. As amended, Woods's claim sought $381,355.00 (for housekeeping services, nursing care, cleaning supplies, and adult diapers). The services described as relating to February 1998 to December 2008 (for $113,200.00) were:

> Basic household chores for housekeeping/maid services for 3000 square foot home, vacuuming, dusting, mopping, cleaning, cooking, average two meals daily, dishwashing, bed linens, laundry, ironing and putting away clothes. In addition to the basic services, heavy cleaning twice a year, lawn mowing twice a week, trimming 94 bushes twice a year, landscaping, planting, weeding, harvesting for vegetable garden, canning all produce, tending flowers, washing furnace filters, cleaning flooded basement two times and supervising the third time, transportation, prescription pill monitoring, attending doctor visits, and all other personal services, including calling for all doctor appointments and service calls. This gradually became seven days a week, often 24 hours a day.

(Claimant's Ex. 18.)

[9] Woods sought compensation for January 2009 to December 2011 in the amount of $262,800.00. The claim included the description:

> Services included nursing back to health after falls, ER and
> hospital visits, dressing, bathing, assistance in walking,
> incontinent care, anus wound care, and insuring that George
> took his pills, thus allowing him to continue in his own home
> with 24 hour care and to avoid assisted living or nursing home
> care costs.

(Claimant's Ex. 18.) Woods requested $400.00 for cleaning Henry's home after his death, $4175.00 for cleaning supplies purchased over the years, and reimbursement for Henry's adult diapers in the amount of $780.00. The claim was substantially disallowed by the Estate executor and a bench trial ensued.

The parties presented evidence on March 17, 2015, April 21, 2015, and October 20, 2015. On March 16, 2016, the probate court partially allowed Woods' claim, awarding $125,400.00. This appeal ensued.

# Discussion and Decision

## Standard of Review

An oral request for findings of fact and conclusions thereon, such as was made in this case, does not invoke Indiana Trial Rule 52(A). *D.A.X., Inc. v. Employers Ins. of Wausau*, 659 N.E.2d 1150, 1155 (Ind. Ct. App. 1996), *trans. denied*. Where the trial court issues findings of fact and conclusions thereon sua sponte, "the findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies and we may affirm on any legal theory supported by

the evidence adduced at trial." *Samples v. Wilson*, 12 N.E.3d 946, 949-50 (Ind. Ct. App. 2014).

[12] We apply a two-tier standard of review to the sua sponte findings and conclusions. *Id.* at 950. First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* We will set aside findings and conclusions only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. *Id.* In conducting our review, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Id.* We do not reweigh the evidence nor do we assess witness credibility. *Id.*

## Legal Standard for Recovery

[13] The Estate contends that the probate court relied upon an improper legal standard. Per the Estate, "the trial court relied on the general rule for proving an implied contract, rather than the more specific rule applicable to proving an implied contract within a family relationship." Appellant's Br. at 10. The Estate's position is that Woods was required to rebut a presumption that her services were gratuitous, and that she was unable to do so.

[14] Recently, in *Neibert v. Perdomo*, 54 N.E.3d 1046 (Ind. Ct. App. 2016), a panel of this Court determined that a cohabitant's claim for services performed without donative intent survived a motion for dismissal. The Court recognized: "A person who cohabits with another person without ever marrying is entitled to relief *if* he establishes an express contract, an implied contract, or unjust

enrichment." *Id.* at 1051. The Court explained the potential theories of recovery:

> "Also referred to as quantum meruit or quasi-contract, unjust enrichment requires a party who has been unjustly enriched at another's expense to make restitution to the aggrieved party." *Reid v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012). To recover for unjust enrichment, the plaintiff must show that (1) he rendered a measurable benefit to the defendant at the defendant's express or implied request; (2) he expected payment from the defendant; and (3) allowing the defendant to retain the benefit without restitution would be unjust. *Id.* Equitable principles prohibit the unjust enrichment of a person who accepts the unrequested benefits provided by another despite having the opportunity to decline those benefits. *Bright v. Kuehl*, 650 N.E.2d 311, 316 (Ind. Ct. App. 1995).
>
> Similarly, to recover under implied contract, the plaintiff generally must establish that the defendant impliedly or expressly requested the benefits conferred. *Id.* at 315. "Any benefit, commonly the subject of pecuniary compensation, which one, not intending it as a gift, confers upon another who accepts it, is an adequate foundation for a legally implied or created promise to render back its value." *Id.*

*Neibert*, 54 N.E.3d at 1051. The *Neibert* Court summarized the holdings of several cases involving cohabitants' claims for property division or value of services, *Glasgo v. Glasgo*, 410 N.E.2d 1325 (Ind. Ct. App. 1980), *trans. denied*, *Chestnut v. Chesnut*, 499 N.E.2d 783 (Ind. Ct. App. 1986), *Turner v. Freed*, 792 N.E.2d 947 (Ind. Ct. App. 2003), and *Bright v. Kuehl*, 650 N.E.2d 311 (Ind. Ct. App. 1995): "[these] simply eroded and eventually eliminated an exclusion for cohabitants seeking relief on theories of implied contract and unjust enrichment

in a previously prohibited context." *Id.* at 1052. The Court reviewed the facts of *Turner*, where a cohabitant had provided child care and household services while her partner developed a business, and then observed: "Perhaps most importantly, *Turner* illustrates that to prevail, the aggrieved party need not establish an expectation of *monetary payment* for the services rendered." *Neibert*, 54 N.E.2d at 1052.

[15] Subsequently, in *McMahel v. Deaton*, 61 N.E.3d 336, 344 (Ind. Ct. App. 2016), the appellant requested that this Court reconsider the holding in *Bright*, "regarding the equitable remedies that may be invoked in disputes between formerly cohabiting couples who never married." McMahel urged that an express agreement should be required before dividing property acquired by cohabitating couples. Upon review of the reasons for the decisions in such cases as *Bright* and *Turner*, the *McMahel* panel expressly declined the invitation to reconsider the holding of *Bright* "or other cases regarding the equitable remedies available to Indiana courts in addressing claims by formerly cohabitating persons based upon the theories of implied contract and unjust enrichment." *McMahel*, 61 N.E.3d at 346.

[16] Nonetheless, the Estate insists that Henry and Woods were in a familial relationship and thus, there arose a presumption that Woods performed services gratuitously. The Estate directs our attention to *Estate of Prickett v. Womersley*, 905 N.E.2d 1008 (Ind. 2009). In *Estate of Prickett*, a woman sought compensation for the value of her services while caring for her mother when the mother was subject to a guardianship. *See id.* at 1009. The mother's estate

sought summary judgment on the daughter's reimbursement claim on grounds that the daughter had gratuitously served her mother. *See id.* at 1012. Our Indiana Supreme Court reversed the denial of summary judgment, concluding that the designated evidence did not as a matter of law rebut the presumption of gratuitousness. *Id.* at 1015.

[17]   In rendering its decision, the Court discussed the presumption applicable to family members living together:

> We recognize that in general, "[w]here one accepts valuable services from another the law implies a promise to pay for them." *Schwartz v. Schwartz*, 773 N.E.2d 348, 354 (Ind. Ct. App. 2002) (quoting *Estate of Hann v. Hann*, 614 N.E.2d 973, 979 (Ind. Ct. App. 1993)). Indeed, this principle appropriately applies to general creditors. "However, where the parties are family members living together, and the services are rendered in the family context, no implication of a promise to pay by the recipient arises." *Id.* at 355. Instead, in these circumstances, the rebuttable presumption is that services are gratuitous. *See Hill v. Hill*, 121 Ind. 255, 23 N.E. 87, 88-89 (1889); *Cole v. Cole*, 517 N.E.2d 1248, 1250 (Ind. Ct. App. 1988) (*citing Schroeder v. Schroeder*, 117 Ind. App. 410, 70 N.E.2d 764, 765 (1947). The public policy advanced by this presumption is that family members "have reciprocal, natural, and moral duties to support and care for each other." *Cole*, 517 N.E.2d at 1250. . . .
>
> Our state has traditionally recognized only one way to rebut the presumption that services were rendered gratuitously, which requires evidence of an express or implied contract. *Schroeder*, 117 Ind. App. at 412, 70 N.E.2d at 765. Rebutting the presumption in this manner requires the family member to demonstrate two specific elements: "an intention on the part of recipient of the services to pay or compensate therefor, and an

expectation of pay or compensation on the part of the one rendering the services." *Grout v. Solon*, 131 Ind. App. 650, 174 N.E.2d 593, 594 (1961).

*Estate of Prickett*, 905 N.E.2d at 1012-1013.

[18] The Estate claims that the trial court factually found Woods to be Henry's family member but then required proof as if she were only a general creditor. Paragraph 40 of the probate court's order provides in pertinent part: "They operated as a family and were a family." (App. Vol. II at 25.) Also, the appealed order includes language:

> Generally there is a presumption of gratuity when one is caring for a relative but no such presumption for a nonrelative. … a presumption of gratuity may arise when services are rendered and the parties live together in a family relationship. … Having been involved as a couple rather than patient and caretaker may create a presumption that the services were performed gratuitously, but that presumption can also be overcome by proving an express or implied contract.

(App. Vol. II at 28-29.) Ultimately, however, there was no express finding or conclusion as to whether Woods rebutted a presumption.

[19] Notwithstanding the Estate's urging of the imposition of a presumption of gratuitousness, the facts of this case are not analogous to those of *Estate of Prickett*, which involved a parent and child. Here, the probate court's reference to "family" describes how Woods and Henry conducted themselves socially after becoming a "couple." (App. Vol. II at 25.) There is no evidence of a

biological, marital, or adoptive relationship. Woods and Henry were cohabitants, just as were those in *Bright* and its progeny. To the extent that the probate court's language may be read to suggest that a higher burden of proof is imposed upon Woods as a matter of law, we reject the suggestion. Indeed, in *McMahel*, the trial court found that the cohabitants and their child "presented a family unit." 61 N.E.3d at 341. This did not have the effect of creating a rebuttable presumption or otherwise altering the analysis as to equitable remedies available to former cohabitants. Here, the probate court's omission of a finding or conclusion relative to whether Woods rebutted a presumption of gratuitousness is not error.

## Challenged Finding of Fact

[20] The Estate challenges the finding of fact of Paragraph 40, which provides:

> When some of George's friends would kid him about marrying Nadene, he would say he didn't need to marry her and when the time came she would be well taken care of.

(App. Vol. II at 24.) There was only testimony from one of Henry's friends to this effect. Tim Green testified that Henry said he only had one wife and "didn't need" to remarry, but he cared for Woods and she "would be well taken care of." (Tr. at 161.) Thus, the finding is in-artfully drafted in using "some" and inaccurate in using the plural for "friend." However, this does not render the finding unsupported by evidence.

Nonetheless, the Estate argues: "To the extent that the trial court could have relied on any inference drawn from Mr. Green's testimony to support a finding that George Henry had agreed in the future to compensate Nadene for her services, such an inference is not reasonable." Appellee's Br. at 14. The Estate's argument provides no grounds for reversal, as we do not reweigh the evidence nor assess witness credibility. *Samples*, 12 N.E.3d at 950.

## Sufficiency of the Evidence

The Estate does not deny that, over fourteen years, Woods provided innumerable services to Henry. However, the Estate points to the absence of an express contract between Henry and Woods and argues that Woods was unable to prove the existence of an implied contract for payment of her services. According to the Estate, Woods' claim fails due to a lack of evidence that Henry intended to compensate Woods.

"To recover under the theory of implied contract, the plaintiff is usually required to establish that the defendant impliedly or expressly requested the benefits conferred." *Bright*, 650 N.E.2d at 315. A benefit that is commonly the subject of pecuniary compensation which one, not intending a gift, confers upon another who accepts it, is an adequate foundation for a legally implied or created promise to render back the value of benefit. *Id.* Also, "[t]o prevail on a claim for unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust." *Id.* at

316. Equitable principles prohibit the unjust enrichment of a party who accepts unrequested benefits another provides despite having the opportunity to decline those benefits. *Id.*

[24] Here, the trial court entered sua sponte findings and conclusions as to implied contract but did not specifically address unjust enrichment. However, a general judgment standard of review pertains to any legal theory supported by the evidence adduced at trial. *Samples*, 12 N.E.3d at 950. Our review of the testimony and exhibits discloses sufficient evidence for recovery under either implied contract or unjust enrichment principles.

[25] As to implied contract, Woods established that Henry requested the benefits conferred upon him. The trial testimony reveals that his request was sometimes expressed and, at other times, his request was implied. Woods testified that she did not intend a gift of fourteen years of housekeeping, maintenance, gardening, and nursing services; indeed, both she and her daughter had questioned Henry about the lack of payment. Henry protested that he was providing a reciprocal benefit of food but also suggested that something would be done to take care of Woods' needs in the future. Henry's neighbor testified that Woods had cried about "doing all this without pay." (Tr. at 39.) When pressed on whether she should just leave, Woods responded that she could not "turn her back on" Henry. (Tr. at 40.)

[26] As for unjust enrichment, it is abundantly clear that Woods provided valuable services. She attended to the needs of an elderly man who, despite two heart

attacks, obesity, incontinence, and bed sores, was never admitted to an assisted living or skilled nursing facility. Henry's children testified to a lack of full knowledge of his medical conditions but never contended that the medical records were fabricated or exaggerated. They made no arrangements for alternate care and thus incurred no expense depleting potential estate assets. It would be unjust to permit the Estate to retain all the assets preserved without making payment to Woods. There is evidentiary support for the trial court's partial allowance of Woods' claim on equitable grounds.

# Conclusion

The probate court was not required to evaluate Woods' claim in a manner that presumed the services to be gratuitous. There is not a complete lack of evidentiary support for the challenged finding as to Henry's expression of intent. Finally, Woods put forth sufficient evidence to establish that partial allowance of her claim – in the amount of $125,400.00 – was supportable under either implied contract or unjust enrichment.

Affirmed.

Robb, J., concurs.
Vaidik, C.J., concurs in result with separate opinion.

ATTORNEY FOR APPELLANT

Christopher T. Smith
Smith Davis LLC
Greenfield, Indiana

ATTORNEYS FOR APPELLEE

C. Dennis Wegner
C. Dennis Wegner & Assoc., P.C.
Indianapolis, Indiana

Jonathan E. Palmer
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| The Estate of George A. Henry, Deceased,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>Nadene Woods,<br><br>*Appellee-Plaintiff.* | May 19, 2017<br><br>Court of Appeals Case No.<br>49A05-1604-PL-810<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Steven R. Eichholtz, Judge<br><br>Trial Court Cause No.<br>49D08-1202-EU-4311<br>49D08-1208-PL-31442 |

**Vaidik, Chief Judge, concurring in result.**

I concur in the result reached by the majority. I write separately to express my view that the rebuttable presumption that services are gratuitous should apply to this case because although Woods and Henry were not married, they lived together as a couple and operated as a family for fourteen years.

[30]     The record shows that shortly after Phyllis's death in February 1998, Woods started doing Henry's laundry. As time went on, Woods's jobs progressed to cleaning Henry's house, to mowing his lawn, to eventually becoming his caregiver. Since Henry had paid Woods for taking care of Phyllis, she expected to be paid for this work as well, but Henry never paid her. After Henry suffered a heart attack in September 1998, Woods moved in with Henry to help with his recovery. This resulted in them spending more time together, which they both enjoyed. They started going on vacations together, went out socially as a couple, entertained in Henry's home as a couple, attended church as a couple, went to funerals together, and sent Christmas cards signed in both of their names. Many of their friends thought of them as boyfriend and girlfriend, and Henry sometimes referred to Woods as his girlfriend. Henry's family included Woods in celebrating the holidays. According to one of Henry's friends, although Henry said he was not going to marry Woods, he said she would be well taken care of. As Henry's health declined (he had a second heart attack in 2010), Woods did more for Henry, especially in the last two years of his life. She accompanied him to his doctor appointments, monitored his medications, and took care of his sores. Henry died in 2012. Woods was listed in his obituary as his "loving companion." Appellant's App. Vol. II p. 41.

[31]     Thereafter, Woods filed a claim against Henry's estate for fourteen years of services and supplies she provided to Henry. The probate court partially granted Woods's claim, awarding her $125,400.

[32] In general, where one accepts valuable services from another, the law implies a promise to pay for them. *Estate of Prickett v. Womersley*, 905 N.E.2d 1008, 1012 (Ind. 2009). But where the parties are family members living together and the services are rendered in the family context, no implication of a promise to pay by the recipient arises. *Id.* Instead, the rebuttable presumption is that the services are gratuitous. *Id.* In order to rebut the presumption, there must be evidence of an express or implied contract. *Id.*

[33] The probate court recognized this general rule. It found that although Woods was not Henry's relative, the presumption nevertheless applied because "the parties live[d] together in a family relationship." Appellant's App. Vol. II p. 29. The court noted that although "[c]aregivers and clients often grow fond of each other," "this relationship was more than caregiver and client"; "it was more like girlfriend and boyfriend." *Id.* I believe that the probate court correctly applied the rebuttable presumption to this set of facts, because Woods and Henry lived together and "operated as a family" for fourteen years. *Id.* at 25. The fact that they were not married does not change the fact that they lived together as a family for an extended period of time. *See Kitch v. Moslander*, 114 Ind. App. 74, 50 N.E.2d 933, 938 (1943) (finding that ex-husband and ex-wife who lived together after living apart were family and that there was an implied contract for services ex-wife provided to ex-husband for over thirty years). Accordingly, I respectfully disagree with the majority that the presumption that services are gratuitous does not apply here because there is "no evidence of a biological, marital, or adoptive relationship." Slip op. at 10-11.

[34] Further, I agree with the probate court that Woods rebutted this presumption. The court explained that the presumption could be overcome by proving an implied contract. Appellant's App. Vol. II p. 29 ("Having been involved as a couple rather than patient and caretaker may create a presumption that the services were performed gratuitously, but that presumption can also be overcome by proving an express or implied contract."). By then finding an implied contract in the amount of $125,400, the court found this presumption to be rebutted. Because the majority affirms the $125,400 claim for Woods, I concur in the result reached by the majority.