# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 28 2020, 9:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Bryce Runkle | Jeffrey Elfman |
| Peru, Indiana | Kokomo, Indiana |

IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Barbara Kauffman, | October 28, 2020 |
| *Appellant-Defendant,* | Court of Appeals Case No. 20A-PL-45 |
| v. | Appeal from the Miami Superior Court |
| Teresa K. Kelley, | The Honorable J. David Grund, Judge |
| *Appellee-Plaintiff,* | Trial Court Cause No. 52D01-1811-PL-558 |

**Robb, Judge.**

# Case Summary and Issues

[1] Barbara Kauffman lived in a trailer on land previously owned by her sister Billie Childers. Childers allegedly promised Kauffman that she could live on the property for the rest of her life. When Childers died, the land was inherited by Childers' daughter Teresa Kelley. Kelley subsequently filed a claim for immediate possession seeking to eject Kauffman from the property which was granted by the trial court. Kauffman now appeals raising several issues; we find the following two restated issues to be dispositive: (1) whether the record establishes that there was an oral agreement between Kauffman and Childers and (2) whether the trial court erred in finding that any oral agreement granting Kauffman an interest in property was barred by the statute of frauds. We conclude the trial court incorrectly found that the statute of frauds barred a fully performed oral agreement and the only conclusion that can be drawn from the record is that there was an oral agreement between Kauffman and Childers. Accordingly, we reverse the trial court's judgment.

# Facts and Procedural History

[2] In 2001, Kauffman allegedly made an oral agreement with Elva Triplett and Childers, her mother and sister respectively, that in exchange for being Triplett's caretaker for the remainder of Triplett's life Kauffman would be allowed to live at 1096 E. 5th Street in Peru (the "Property") for the rest of her life. The Property was originally owned by Billie and Killus Childers and was transferred to Elva Triplett for a period but was eventually returned to the

Childerses by warranty deed executed in March of 2000. *See* Transcript of Evidence, Volume II at 32; Index of Exhibits, Volume III at 7-9.

[3] In October 2001, Kauffman moved into a 1979 Commodore trailer ("Trailer") on the Property and became Triplett's caregiver.[1] Kelley testified that Kauffman was in fact the "care taker of [Triplett]." Tr., Vol. II at 32. Kauffman was Triplett's caregiver until 2005 when Triplett died. After Triplett's death, Kauffman continued to live on the Property.

[4] In 2011, Childers died. Childers willed the Property to her three children, Kelley, Eugene Snowden, and Kenneth Childers, in equal shares.[2] Childers' will was executed in 1996 prior to the alleged agreement. Snowden and Kenneth both transferred their interest in the property to Kelley via quit claim deed.[3] *See* Ex., Vol. III at 10-11. Snowden testified that Childers granted Kauffman a life estate in the Property; however, he did not know if the agreement had ever been reduced to writing. *See* Tr., Vol. II at 118. Snowden further testified that he did not believe that the agreement was mentioned in Childers' will but that Childers

---

[1] In 2010, the title to the Trailer was transferred into Kauffman's name.

[2] Killus Childers predeceased Billie Childers at which time the Property became titled to Billie Childers as the surviving tenant by the entireties. *See* Ex. Vol. III at 8.

[3] Neither of the quitclaim deeds executed by Snowden and Kenneth made a reference to a life estate interest in the Property. *See* Ex., Vol. III at 10-11. Further, the quit claim deeds were not executed at the same time. Kenneth transferred his interest to Kelley in July 2012 while Snowden did not execute a quit claim deed until July 2016. Kelley stated that she "bought [her] step-brother out. [And her] brother signed his third over[.]" Tr., Vol. II at 65. But she also stated that she "paid the property to my brother, [Kenneth] Childers" when asked if she paid for the property. *Id.* at 30. It is therefore unclear which brother Kelley paid money to in exchange for his interest in the Property.

had agreed that Kauffman could live in the Trailer on the Property for the rest of her life "[a]s long as she kept the yard up and paid the taxes."[4] *Id.* at 120.

[5] Kauffman continued to live on the Property after Childers' death and continued to pay the property taxes until 2018. In 2018, Kelley filed a verified claim for immediate possession to eject Kauffman from the Property. The trial court found that any oral agreement allowing Kauffman to live on Property for the remainder of her life violated the statute of frauds and granted Kelley's claim for immediate possession. Kauffman now appeals.

# Discussion and Decision

## I. Standard of Review

[6] Where, as here, the trial court enters findings of fact and conclusions thereon without an Indiana Trial Rule 52 written request from a party, the entry of findings and conclusions is considered to be *sua sponte. Samples v. Wilson,* 12 N.E.3d 946, 949 (Ind. Ct. App. 2014). When the trial court enters specific findings *sua sponte*, the "findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies and we may affirm on any legal theory

---

[4] Kenneth Childers did not testify.

supported by the evidence adduced at trial." *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 614 (Ind. Ct. App. 2011), *trans. denied*.

[7]     We apply a two-tier standard of review to the *sua sponte* findings and conclusions. *Estate of Henry v. Woods*, 77 N.E.3d 1200, 1204 (Ind. Ct. App. 2017).  First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* We will set aside findings and conclusions only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. *Id.* In conducting our review, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Id.* We do not reweigh the evidence nor do we assess witness credibility. *Id.*

[8]      We defer to the trial court's findings of fact, but do not defer to its conclusions as to the applicable law. *Atterholt v. Robinson,* 872 N.E.2d 633, 639 (Ind. Ct. App. 2007).  Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. *Trabucco v. Trabucco*, 944 N.E.2d 544, 549 (Ind. Ct. App. 2011) (quotation omitted), *trans. denied.* We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions. *Id.*

## III.  Existence of Oral Agreement

[9]     Kauffman alleges that there was an oral agreement between Childers and herself granting her a life estate in the Property in exchange for being Triplett's caretaker for the remainder of Triplett's life. The trial court concluded that the

statute of frauds barred oral agreements granting an interest in land and therefore did not make a finding regarding whether an oral agreement between Kauffman and Childers existed.

[10] Because Kauffman did not prevail at trial, she appeals from a negative judgment. *Garling v. Ind. Dep't of Nat. Res.*, 766 N.E.2d 409, 411 (Ind. Ct. App. 2002) (stating that a negative judgment is one entered against a party who bore the burden of proof at trial), *trans. denied*. On appeal, we will not reverse a negative judgment unless it is contrary to law. *Mominee v. King*, 629 N.E.2d 1280, 1282 (Ind. Ct. App. 1994). A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion which is contrary to that reached by the trial court. *In re Marriage of Wooten*, 563 N.E.2d 636, 638 (Ind. Ct. App. 1990). And in determining whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together with all the reasonable inferences to be drawn therefrom. *J.W. v. Hendricks Cnty. Office of Family & Children*, 697 N.E.2d 480, 482 (Ind. Ct. App. 1998).

[11] Here, the record is without conflict that an oral agreement between Kauffman and Childers existed. Kauffman testified that in exchange for taking care of Triplett she had been promised that she would be allowed to live on the Property for the rest of her life. This testimony was corroborated by two other witnesses, both of whom are related to Childers. Snowden testified, and when

asked whether "Kauffman [was] promised a life estate by [] Childers"[5] in exchange for taking care of Triplett and whether "Kauffman would be able to remain in the [Trailer] for the rest of her life[,]" he responded with "yes" and "[t]hat was the agreement." Tr., Vol. II at 118, 120. Reeves also testified that Kauffman had been promised that she could live on the Property "as long as she lived."[6] *Id.* at 42.

[12] Kelley presented no evidence disputing the existence of the oral agreement. Kelley's testimony focused on the agreement's failure to be in writing. Kelley testified that Childers' will did not leave Kauffman "any type of [] life estate or any type of interest" in the Property. *Id.* at 26. She further testified that there was no language in the warranty deed from Triplett to Childers or the quit claim deeds executed by Snowden and Kenneth reserving any interest in the Property for Kauffman. Kelley responded "no" when asked whether she believed that she was bound by "any prior arrangement," *id.*; however, she did not ever testify that the agreement did not exist, only stating that she was not "privy" to any promise made to Kauffman, *id.* at 31. Kelley did not ever disclaim the existence of an oral agreement.

---

[5] Snowden clarified that by "life estate" he meant that "Kauffman had the right to live in the [T]railer for the rest of her life on [the Property.]" Tr., Vol. II at 121.

[6] One of Kauffman's issues on appeal challenges five hearsay objections sustained by the trial court. Four of the five statements were regarding the oral agreement between Kauffman and Childers while the fifth pertained to whether the Trailer could be moved from the property. We do not need to address whether the exclusion of those statements as hearsay was erroneous because they have no impact on the outcome due to other testimony about the agreement being admitted into evidence. Even if the statements should have been admitted, they would be merely cumulative and consistent with the evidence.

Because the record is devoid of any evidence disputing the existence of an oral agreement, we conclude that the record is without conflict and the only conclusion that can be drawn from the record is that there was an oral agreement between Kauffman and Childers granting Kauffman the right to live on the Property for the remainder of her life. *See In re Marriage of Wooten*, 563 N.E.2d at 638.

## II. Statute of Frauds

The trial court determined that even if there was an oral agreement between Childers, Triplett, and Kauffman granting Kauffman an interest in the Property, it violated the statute of frauds. The trial court concluded, "[a]ssuming that [] Triplett and [] Kauffman did have an oral agreement giving her a Life Estate interest in the Property[,] said agreement violates the Statute of Frauds on the well-established rule of law that contracts for real property have to be in writing." Appealed Order at 2. We disagree.

Indiana Code section 32-21-1-13(a) states that "a conveyance of land or of any interest in land shall be made by a deed that is: (1) written; and (2) subscribed, sealed, and acknowledged by the grantor[.]" However, when an oral agreement is fully performed, the statute of frauds does not apply. *See McCasland v. Aetna Life Ins. Co.,* 108 Ind. 130, 9 N.E. 119, 119-20 (1886). "Where one party to an oral contract in reliance on that contract has performed his part of the agreement to such an extent that repudiation of the contract would lead to an unjust or fraudulent result, equity will disregard the requirement of a writing

and enforce the oral agreement." *Summerlot v. Summerlot*, 408 N.E.2d 820, 828 (Ind. Ct. App. 1980). Further, our supreme court has held that "specific performance may be had in favor of the party who has taken possession and fully performed his part[.]" *Denlar v. Hile*, 123 Ind. 68, 24 N.E. 170, 171 (1890). We conclude that Kauffman (1) fully performed the alleged agreement and (2) took possession of the Property.

[16] First, to fully perform the alleged oral agreement the record must establish that Kauffman was Triplett's caregiver for the remainder of Triplett's life. Patricia Reeves, Kauffman and Childers' sister, testified that Kauffman was Triplett's caregiver for the rest of her life. *See* Tr., Vol. II at 42. Further, this testimony was echoed by Snowden. *See id.* at 118. The record includes no testimony suggesting that Kauffman was not Triplett's caregiver from the time of the alleged oral agreement in 2001 to Triplett's death in 2005. Kelley even concedes that Kauffman was in fact the "care taker of [Triplett]." *Id.* at 32.

[17] Second, Kauffman must have taken possession of the Property. "The possession must be taken or delivered under and pursuant to the terms of the verbal contract of purchase to take the case out of the operation of the statute of frauds." *Waymire v. Waymire*, 141 Ind. 164, 40 N.E. 523, 524 (1895). Snowden testified that Kauffman was permitted to live on the property for the rest of her life "[a]s long as she kept up the yard and paid the taxes." Tr., Vol. II at 120. Kauffman moved onto the Property in October 2001 to take care of Triplett and remained there after her death. Kauffman lived on the Property for eighteen

years and paid taxes on the property from 2006 until 2018 when Kelley filed a claim for immediate possession to eject her. *See id.* at 100.

[18] We conclude that the oral agreement between Kauffman and Childers granting Kauffman an interest in the Property is not subject to the statute of frauds because the record shows that Kauffman fully performed and took possession of the Property pursuant to the alleged agreement. Accordingly, the trial court erred by relying on an incorrect legal standard. *Trabucco*, 944 N.E.2d at 549.

# Conclusion

[19] Concluding that the record establishes the existence of an oral agreement between Kauffman and Childers granting Kauffman the right to live on the Property for the rest of her life and that the trial court erred in determining as a matter of law that a fully performed oral agreement was barred by the statute of frauds, we reverse.

[20] Reversed.

Crone, J., and Brown, J., concur.