

FILED

Jan 25 2024, 8:56 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James A.L. Buddenbaum
Courtney L. Abshire
Parr Richey Frandsen Patterson Kruse,
LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Lonnie D. Johnson
Justin K. Schwemmer
Clendening Johnson & Bohrer,
P.C.
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Frame Station, Inc. d/b/a
Framemakers,

*Appellant/Cross-Appellee-Plaintiff,*

v.

The Foundry at 304, LLC, Foundry
WPR
Orrego, LLC and Foundry WPR
Elmore, LLC,

*Appellees/Cross-Appellant-Defendants.*

January 25, 2024

Court of Appeals Case No.
23A-CT-1426

Appeal from the Monroe Circuit
Court

The Honorable Geoffrey J.
Bradley, Judge

Trial Court Cause No.
53C01-2004-CT-751

**Opinion by Judge Riley**
Judges Crone and Mathias concur.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant/Cross-Appellee-Plaintiff, Frame Station, Inc. d/b/a Framemakers (Framemakers), appeals the trial court's findings of fact and conclusions thereon with respect to Framemakers' right of use of its express easement across the property of Appellee/Cross-Appellant-Defendant, The Foundry at 304, LLC, Foundry WPR Orrego, LLC, and Foundry WPR Elmore, LLC (collectively, Foundry).

We reverse and remand for further proceedings.

## ISSUE

Framemakers presents one issue on appeal, while the Foundry presents one issue on cross-appeal. We consolidate both issues and restate these as the following single issue: Whether the trial court erred by concluding that the Foundry did not interfere with Framemakers' easement during the development and construction of the Foundry's real estate project.

## FACTS AND PROCEDURAL HISTORY

Framemakers, founded by Ulgis Augenbergs (Augenbergs) and a former business partner in 1976, is a private corporation that operates a retail custom picture frame store at 314 West Kirkwood Avenue in Bloomington, Indiana. In addition, Framemakers also operates a wholesale business in the same location, known as 'Prime Chops', that sells custom framing to other retail frame stores, mostly in central Indiana. Framemakers' retail store relies almost entirely on

walk-in retail customers for its business, and many customers will make several trips to the store to custom frame their artwork.

[5] The Foundry at 304, LLC is an Indiana limited liability company created to own and develop a multi-family and commercial real estate project (Project) on property located at 304 West Kirkwood Avenue, directly east of Framemakers' retail business. Foundry WPR Orrego, LLC and Foundry WPR Elmore, LLC own the commercial space on the first floor of the Project.

[6] Framemakers' current location at 314 West Kirkwood Avenue, identified as Lot 154 of the City of Bloomington, is leased from Augenbergs and his spouse, and provides Framemakers with a parking lot directly behind and to the north of the building, along the alley between Kirkwood Avenue and Sixth Street. Lot 154 is accessed from Sixth Street via an easement originally granted by the First National Bank of Bloomington to Alma J. Henry (Framemakers' predecessor in interest) as the grantee and recorded on April 29, 1974 (Easement). The specifically delineated Easement provides, in pertinent part:

> THIS INDENTURE WITNESSETH, that the undersigned, FIRST NATIONAL BANK OF BLOOMINGTON, hereinafter called GRANTOR, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable considerations, not herein expressed, the receipt of which is hereby acknowledged, does hereby quit claim, convey and grant to ALMA J. HENRY, of Monroe County, Indiana, hereinafter called GRANTEE, a non-exclusive easement and right of way for ingress and egress over and across the following described lands, to-wit:

A part of the In-Lot 198 in the City of Bloomington, Indiana, described as follows:

An easement for ingress and egress over the following described tract: Beginning at a point 16.50 feet East of the Northwest corner of the said In-Lot 198 said point being on the South line of Sixth Street, thence South for a distance of 99.52 feet, thence S35°W for a distance of 40.69 feet, thence South for a distance of 3.78 feet, thence East for a distance of 12.0 feet to the Northwest corner of In-Lot 155, thence N 35°E for a distance of 40.69 feet, thence North for a distance of 103.30 feet to the South line of Sixth Street, thence West over and along the said South line of Sixth Street for a distance of 12.00 feet to the place of beginning. Containing 1727 square feet, more or less.

> Said easement is for the use and benefit of the lands now owned by the GRANTEE, and described as follows, to-wit:
>
> In Lot One Hundred Fifty-Four (154) in the City of Bloomington, Indiana and shall run to and for the use and benefit of the above-described lands.
>
> It shall be the obligation of the GRANTOR to establish, construct and maintain the easement granted herein and GRANTOR hereby agrees that at all times during any construction on the premises of GRANTOR, adjacent to the present North and South alley, ingress and egress through the alley as now established, running north and south between Fifth and Sixth Streets, a portion of which is East of the lands of the Grantee, or the easement granted herein, there shall be no unobstructed use thereof

for ingress and egress from Fifth Street to Sixth Street in the City of Bloomington, Indiana.[1]

(Appellant's App. Vol. II, pp. 28-29).

[7] On February 9, 2000, Bank One, N.A. conveyed Lot 155, Lot 156, Lot 197, and Lot 198 to Elmore Y Orrego, LLC, which, in turn, on January 13, 2016, conveyed the Lots by special warranty deed to the Foundry. Both deeds are "subject to any and all easements, agreements, and any other encumbrances or restrictions of record." (Appellant's App. Vol. II, pp. 29-30).

[8] The Easement, which the Foundry is aware of, runs across Lot 198 in favor of Lot 154 and was created when the alley, which originally ran from Kirkwood Avenue to Sixth Street, was partially vacated from the northeast corner of Framemakers' Lot 154 north to Sixth Street to make way for the Bank One drive-through lanes. The alley from the north edge of Framemakers' Lot 154, which runs south to Kirkwood Avenue, remained in place. The Easement from Sixth Street runs south (parallel to the vacated alley) where it terminates at approximately the northeast corner of Framemakers' Lot 154 and where the alley begins and runs to Kirkwood Avenue, providing continuous access from Sixth Street to Kirkwood Avenue.

---

[1] The remainder of the Easement involved a now-extinguished right of first refusal to purchase and is not relevant to the dispute in this Cause.

[9]     At some point in 2013 and 2014, the Foundry commenced the design and development of the Project, which was to occupy Lots 155, 156, 197, and 198. In 2016, the Foundry contracted with Onyx and East, LLC (Onyx) to construct the new commercial building. Pursuant to the terms of the contract entered into by the Foundry and Onyx, Onyx was responsible for supervision and direction of the Project and was mandated to confine the work to areas permitted by applicable laws, statutes, ordinances, codes, rules, and regulations. Beginning in June 2017, a large crane was placed in the Easement area, blocking access between Sixth Street and the Framemakers' property. For the remainder of 2017, the evidence reflected the continuous obstruction of the Easement area by the ongoing construction on the Project. The obstructions were as simple as leaving a fence in the Easement or as severe as leaving construction materials and equipment unattended in the Easement, completely blocking its access. Over the period of time running from the middle of 2017, when the portable crane was installed in the Easement, through 2019, the Easement was continuously occupied by construction vehicles or materials. Tire marks on the Framemakers' parking lot show that the Easement, alley, and parking lot were used as part of the construction site on a frequent basis. Despite being aware of the construction's interference with Framemakers' Easement, at no point did the Foundry place any signage, issue written instructions, or take any other affirmative action to protect Framemakers' rights to the ingress and egress on the Easement.

[10]    On April 30, 2020, Framemakers filed its Complaint against the Foundry, which it amended on May 5, 2020, seeking to address the interference and obstruction of the Easement by requesting an injunction to preserve and protect easement rights, an injunction to prohibit blocking the alley, damages for trespass to its property, and damages to the business of Framemakers. Framemakers did not pursue the injunctive relief and, after parties waived trial by jury, the case was tried before the bench on January 11-12, 2023, on the issues of interference, trespass, and damages to Framemakers' business.

[11]    On June 1, 2023, the trial court entered forty-three findings of fact and thirty-two conclusions thereon, issuing a judgment in favor of the Foundry. In interpreting the Easement, the trial court found that "neither party has alleged that the language of the Easement is ambiguous, and the [c]ourt finds that there is no ambiguity in the grant of the Easement." (Appellant's App. Vol. II, p. 38). Looking at the plain and ordinary meaning of the language, the trial court noted that "the intention of the Easement grant was that Framemakers would have unobstructed access for ingress and egress even when the grantor, the servient estate, had construction happening on its premises." (Appellant's App. Vol. II, p. 38). The court concluded that, based on the evidence before it, it was "clear that Onyx, and parties they employed, continuously and pervasively obstructed Framemakers' Easement rights, either partially or in whole, in violation of the Easement grant." (Appellant's App. Vol. II, p. 38). On the issue of trespass, the trial court found the Foundry not liable for the actions of their contractors and that there was no evidence that the Foundry trespassed on

Framemakers' property. With respect to the damages, the trial court concluded that the Foundry's contractor was solely responsible for obstruction and interference with the Easement and that the Foundry was not liable for the contractors' actions.

[12] Framemakers now appeals. Additional facts will be provided if necessary.

## DISCUSSION AND DECISION

I. *Standard of Review*

[13] Where the trial court issues findings of fact and conclusions thereon *sua sponte*, "the findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies and we may affirm on any legal theory supported by the evidence adduced at trial." *Estate of Henry v. Woods*, 77 N.E.3d 1200, 1204 (Ind. Ct. App. 2017). We apply a two-tier standard of review to the *sua sponte* findings and conclusions. *Id*. First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id*. We will set aside findings and conclusions only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. *Id*. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Barkwill v. Cornelia H. Barkwill Revocable Trust*, 902 N.E.2d 836, 839 (Ind. Ct. App. 2009). In conducting our review, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Estate of Henry*, 77

N.E.3d at 1204. We do not reweigh the evidence, nor do we assess witness credibility. *Id.*

II. *Interference with Easement*

Framemakers contends that because the Easement grants Framemakers a non-possessory interest across the property of the Foundry and prohibits the Foundry from interfering with Framemakers' use of the Easement, the trial court erred when it applied a negligence standard to a real estate easement dispute and concluded that the Foundry defeated the interest by allowing its contractors to interfere with Framemakers' use of the Easement.

As our supreme court has stated: "An easement is the right to use another's land for a specified purpose. An easement appurtenant benefits adjoining land; an easement in gross benefits a specific individual. The land benefited by an easement is the dominant estate; the land burdened by an easement is the servient estate." *Town of Ellettsville v. DeSpirito*, 111 N.E.3d 987, 990 (Ind. 2018). And where—as here—an easement was "voluntarily created by a written instrument to serve a specified purpose," the easement is known as an express easement. Easement, Black's Law Dictionary (11th ed. 2019). When examining the scope of easement rights in Indiana, we "hold[ ] the parties to the agreement they—or their predecessors in interest—made when they negotiated their easement or acquired their property concerning the easement." *DeSpirito*, 111 N.E.3d at 995; cf. Successor in Interest, Black's Law Dictionary (11th ed. 2019) (noting a successor in interest "retains the same rights as the

original owner, with no change in substance"). In this way, Indiana common law "promotes certainty," ensuring "property interests and corresponding property values remain stable and predictable." *DeSpirito*, 111 N.E.3d at 995.

[16] It is well-established that easements are limited to the purpose for which they are granted. *McCauley v. Harris*, 928 N.E.2d 309, 314 (Ind. Ct. App. 2010). The owner of an easement, known as the dominant estate, possesses all rights necessarily incident to the enjoyment of the easement. *Id.* The dominant estate holder may make repairs, improvements, or alterations that are reasonably necessary to make the grant of the easement effectual. *Id.* The owner of the property over which the easement passes, known as the servient estate, may use his property in any manner and for any purpose consistent with the enjoyment of the easement, and the dominant estate cannot interfere with the use. *Id.* "All rights necessarily incident to the enjoyment of the easement are possessed by the owner of the dominant estate, and it is the duty of the servient owner to permit the dominant owner to enjoy his easement without interference." *Id.* The servient owner "may not so use his land as to obstruct the easement or interfere with the enjoyment thereof by the owner of the dominant estate." *Id.* Moreover, the owner of the dominant estate cannot subject the servient estate to extra burdens, any more than the holder of the servient estate can materially impair or unreasonably interfere with the use of the easement. *Id.*

[17] The Foundry, when taking ownership of Lot 198, had actual and constructive knowledge of the existence of the Easement and the rights granted to

Framemakers under the Easement. In interpreting the unambiguous language of the Easement, the trial court unequivocally concluded that

> the Easement unambiguously grant[s] Framemakers a 'non-exclusive easement and right of way for ingress and egress' over a specifically described portion of Lot 198, but it also explicitly provides that 'there shall be no unobstructed use [of the [E]asement] for ingress and egress from Fifth Street to Sixth Street' 'during any construction on the premises of GRANTOR.' The plain and ordinary language of the Easement demonstrates that the intention of the Easement grant was that Framemakers would have unobstructed access for ingress and egress even when the grantor, the servient estate, had construction happening on its premises.

(Appellant's App. Vol. II, p. 38). Finding, based on the evidence before it, that Framemakers' Easement rights had been obstructed during the construction of the Project, the trial court, instead of concluding that the Foundry had interfered with Framemakers' Easement rights, applied a negligence standard and determined that "Onyx [as the Foundry's contractor], and parties they employed, continuously and pervasively obstructed Framemakers' Easement rights, either partially or in whole, in violation of the Easement grant." (Appellant's App. Vol. II, p. 38.).

[18] In its conclusion that Onyx was in violation of Framemakers' Easement rights, the trial court applied the general rule that "a principal is not bound by the acts of his agent unless they are performed within the scope of authority actually and ostensibly conferred upon him," citing as authority *Cincinnati H. & I.R. Co. v. Carper*, 13 N.E. 122, 124 (Ind. 1887), as well as the rule that "courts have

recognized that an independent contractor may create liability for his principal in certain circumstances," citing *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 978 (Ind. 1998). (Appellant's App. Vol. II, p. 39). The trial court continued to analyze this Cause pursuant to negligence principles and concluded that no exceptions to these rules applied and that Onyx, and not the Foundry as its principal, was responsible for the obstruction of and interference with the Easement.

[19] The trial court conflated the property law principles at play in the Easement rights determination between Framemakers and the Foundry with the negligence principles between the Foundry, as owner of the Project, and Onyx, as its contractor. Onyx is not a party to the Easement, and Framemakers is not a party to the construction contract entered into between the Foundry and Onyx. This case involves a written easement document where Framemakers has asserted that the servient estate owner interfered with and obstructed Framemakers' enjoyment of its rights under the Easement. The Easement was entered into between Framemakers and the Foundry, and the Foundry is liable for violating Framemakers' rights under the Easement.

[20] The only legal construction under which Framemakers could pursue Onyx for interfering with its Easement is by being in privity with the Foundry in its construction contract with Onyx. Generally, only parties to a contract or those in privity with the parties have rights under the contract. *OEC Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1315 (Ind. Ct. App. 1996). However, "one not a party to an agreement may nonetheless enforce it by demonstrating that the parties

intended to protect him under the agreement by the imposition of a duty in his favor." *Id*. To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. *Id.* It is not enough that performance of the contract would be of benefit to the third party. *Id.* It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed. *Id.* The intent of the contracting parties to bestow rights upon a third party "must affirmatively appear from the language of the instrument when properly interpreted and construed." *Freigy v. Gargaro Co.,* 60 N.E.2d 288, 291 (1945).

[21] The construction agreement between the Foundry and Onyx does not indicate that the parties affirmatively placed a duty on Onyx to keep the Easement free of any obstructions. Rather, the boilerplate contractual language merely directs Onyx to confine the work to areas permitted by applicable laws, statutes, ordinances, codes, rules, and regulations, and specifically mentions that the "[a]greement is made solely and specifically between and for the benefit of the parties hereto, [], and no other person, individual, corporation or entity, whatsoever, shall have any rights, interests or claims hereunder or be entitled to any benefits under or on account of this [a]greement[.]" (Exh. Vol. VII, p. 60).

[22] Furthermore, every case cited by the trial court—and the Foundry—in support of its decision involved the negligent actions of contractors in relation to personal injury claims by third parties and not the intentional interference with

easement rights between the parties to that easement which are rooted in a contract. *See, e.g., Becker v. Kreilein*, 770 N.E.2d 315, 318 (Ind. 2002) ("Indiana recognizes five exceptions to the general rule of non-liability of a principal for an independent contractor's negligence[.]"); *Gwinn v. Harry J. Kloeppel & Assoc. Inc.*, 9 N.E.3d 687, 691 (Ind. Ct. App. 2014) ("The long standing general rule is that a principal is not liable for the negligence of a general contractor.") These cases and principles have no application in determining the rights of the parties to the Easement. While these cited cases may provide guidance on the relative responsibilities of parties to a personal injury case, they do not provide guidance to the determination of the relative rights of parties to an express easement.

[23] The Foundry cites to *Gray v. Westinghouse Electric Corp.*, 624 N.E.2d 49 (Ind. Ct. App. 1993), as standing for the proposition that one who hires an independent contractor is also not liable for the contractor's torts, not just negligence. While it is true that the *Gray* case involved a nuisance claim and not a negligence claim, the court held that the principal could not escape liability for a nuisance claim related to PCB contamination by hiring an independent contractor whose work by nature would lead to a nuisance. *Id.* at 54. Likewise here, the Foundry hired Onyx to construct a building, and the very nature of Onyx's work resulted in the interference and obstruction of the Easement.

[24] In its cross-appeal, the Foundry posits that the trial court erred in its interpretation of the unambiguous language of the Easement. *See Burkett v. Am. Family Ins. Group*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000) ("An ambiguity does not exist merely because the parties proffer differing interpretations of the

[contract] language."). Focusing on the language in the Easement that "there shall be no unobstructed use [of the Easement] for ingress and egress from Fifth Street to Sixth Street" "during any construction on the premises of GRANTOR," the Foundry asserts that the trial court's interpretation that Framemakers should have unobstructed access for ingress and egress even when the Foundry had construction on its premises, would render the word "no" ineffective and meaningless. (Appellant's App. Vol. II, p. 38). If the Easement was truly meant to give Framemakers unobstructed access during the construction on Foundry's property, the Foundry contends that the Easement should have read, 'there shall be unobstructed use for ingress and egress . . . during any construction.' We disagree. "When construing an instrument granting an easement, the trial court must ascertain and give effect to the intention of the parties, which is determined by proper construction of the language of the instrument from an examination of all parts thereof." *McCauley*, 928 N.E.2d at 314. In this light, "[p]articular words and phrases cannot be read alone, as the parties' intention must be gleaned from the instruction as a whole." *Id.* Here, the Easement runs across Lot 198, as the servient estate, for the benefit of Lot 154, the dominant estate, and provides for a "non-exclusive easement and right of way for ingress and egress over and across [] Lot 198." (Appellant's App. Vol II, p. 68). The Easement further obligates the Foundry, as the grantor, to agree "that at all times during any construction on the premises of GRANTOR, [], there shall be no unobstructed use thereof for ingress and egress []." (Appellant's App. Vol. II, p. 68). A reading of all material parts of the Easement leads to the reasonable

construction that the parties intended for Framemakers, as grantee and owner of Lot 154, to have unobstructed ingress and egress. While the placement of the word "no" is confusing, the intent of the parties "must be gleaned from the instrument as a whole." *McCauley*, 928 N.E.2d at 314. Accepting the Foundry's interpretation would render all the preceding language of the Easement meaningless in favor of the puzzlingly placed word "no." We find that the Easement's unambiguous language demonstrates that Framemakers would enjoy unobstructed access, even when the Foundry had ongoing construction on the premises.

[25] Accordingly, we conclude that the trial court erred in insulating the Foundry from liability under the Easement by applying negligence principles. Instead, Framemakers' and the Foundry's respective rights and obligations derive from the express Easement, which, by its unambiguous language, granted Framemakers unobstructed access for ingress and egress even when the Foundry, as the owner of the servient estate, had construction occurring on Lot 198. Based on the evidence before it and undisputed by the parties, the trial court concluded that Framemakers' Easement rights had been "continuously and pervasively obstructed [], either partially or in whole, in violation of the Easement grant." (Appellant's App. Vol. II, p. 38). Therefore, we conclude that the Foundry interfered with Framemakers' Easement rights by obstructing Framemakers' access. We remand to the trial court for the determination of damages, if any.

## CONCLUSION

Based on the foregoing, we hold that the trial court erred by concluding that the Foundry did not interfere with Framemakers' Easement during the development and construction of the Foundry's Project.

Reversed and remanded for further proceedings.

Crone, J. and Mathias, J. concur